# United States Court of Appeals
## For the First Circuit

---

No. 03-2470

BOSTON'S CHILDREN FIRST, et al.,

Plaintiffs, Appellants,

v.

CITY OF BOSTON, et al.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Torruella, Lipez, and Howard, Circuit Judges.

---

Robert J. Roughsedge, with whom Michael Williams, Chester Darling, and CPCR: Citizens for the Preservation of Constitutional Rights, Inc. were on brief, for appellants.
Frances S. Cohen, with whom Erica L. Hovani and Dechert LLP were on brief, for appellees.

---

January 18, 2005

---

**LIPEZ**, **Circuit Judge**.    Plaintiffs, a non-profit organization[1] and ten white children living in Boston, challenged the City's former and current school assignment systems in a case that the district court noted "may possibly be the concluding chapter in thirty years of litigation over the effort to desegregate the Boston public schools." Boston's Children First v. Boston Sch. Comm., 260 F. Supp. 2d 318, 319 (D. Mass. 2003). In rulings that we recently affirmed, the district court rejected the majority of the plaintiffs' claims but awarded nominal damages to two children who were denied seats at their preferred schools because of their race. See Anderson v. City of Boston, 375 F.3d 71 (1st Cir. 2004). Plaintiffs[2] then sought attorney's fees as a "prevailing party" under 42 U.S.C. § 1988. The district court denied the motion, finding that the plaintiffs' de minimis success on the nominal damages claim did not entitle them to a fee award. For the reasons set forth below, we affirm.

---

[1]The non-profit organization, Boston's Children First ("BCF"), was a party to the original suit but the court subsequently concluded that it lacked organizational standing. Boston's Children First v. Boston Sch. Comm., 183 F. Supp. 2d 382, 402 (D. Mass. 2002).

[2]We recognize that the reference to "plaintiffs" in this decision could be a source of confusion. When we refer to "plaintiffs" in describing the background of this case, we are referring to all the plaintiffs who initiated the underlying suit. However, when we discuss the plaintiffs who were prevailing parties in this litigation, we refer only to the two plaintiffs who were awarded nominal damages.

I.

Plaintiffs initiated the underlying suit on June 21, 1999, challenging the Boston Public Schools ("BPS") Controlled Choice Student Assignment Plan ("Old Plan") on the grounds that it improperly considered students' race when assigning them to schools in an effort to achieve "ideal racial percentages."[3]  The plaintiffs sought a declaration that the Old Plan violated their federal and state equal protection rights, as well as injunctive relief and damages.

On July 14, 1999, the Boston School Committee voluntarily amended the Old Plan to eliminate race as a factor in the school admissions process ("New Plan").  The plaintiffs responded by adding a plethora of claims to their suit.  They ultimately sought (1) a declaratory judgment that both Plans violated the Fourteenth Amendment's Equal Protection Clause, 42 U.S.C. §§ 1981 and 1983,[4]

---

[3]As noted, the litigation for which plaintiffs now seek attorney's fees is part of a long saga involving the desegregation of Boston's public school system. See, e.g., Wessmann v. Gittens, 160 F.3d 790 (1st Cir. 1998).  For a more complete history of the suit brought by the plaintiff children and BCF, see Boston's Children First v. City of Boston, 62 F. Supp. 2d 247 (D. Mass. 1999) ("BCF I"); Boston's Children First v. City of Boston, 98 F. Supp. 2d 111 (D. Mass. 2000) ("BCF II"); Boston's Children First v. Boston Sch. Comm., 183 F. Supp. 2d 382 (D. Mass. 2002) ("BCF III"); Boston's Children First v. Boston Sch. Comm., 260 F. Supp. 2d 318 (D. Mass. 2003) ("BCF IV"); Boston's Children First v. Boston Sch. Comm., No. 99-11330-RGS (D. Mass. May 27, 2003) (unpublished) ("BCF V"); Anderson v. City of Boston, 375 F.3d 71 (1st Cir. 2004).

[4]42 U.S.C. §§ 1981 and 1983 prohibit deprivations of constitutional rights under color of state law.

Title VI of the Civil Rights Act of 1964,[5] and Article 111 of the Massachusetts Declaration of Rights;[6] (2) a permanent injunction ordering BPS to admit plaintiffs to the schools of their choice, prohibiting BPS from considering race in school assignments and governance, ordering BPS to redraw attendance zones, and granting BCF access to school records to monitor BPS's compliance with these orders; and (3) nominal and compensatory damages for plaintiffs who were not admitted to their preferred schools under the Old Plan.

In February 2002, the district court ruled that it would consider the plaintiffs' damages claim separately from their claims for prospective relief. The plaintiffs filed a motion for summary judgment on the damages claim on November 1, 2002, seeking nominal damages for all ten student-plaintiffs. That motion noted that the defendants had admitted earlier in the litigation that two students, John Feeney, Jr. and Kathleen McCoy, were denied seats based on their race under the Old Plan.[7] It also emphasized that the defendants had not conceded that the Old Plan was

---

[5]Title VI prohibits institutions receiving federal funds from engaging in racial discrimination. 42 U.S.C. § 2000d.

[6]Article 111 states that "[n]o student shall be assigned to or denied admittance to a public school on the basis of race, color, national origin or creed."

[7]The defendants initially conceded in November 2000 that three students' placements were affected by race. In August 2001, they retracted the admission regarding one student, Kayleigh Barry-Meltzer, explaining that it had been based on a mistaken assumption regarding the seating capacity at her preferred school.

unconstitutional.  The parties then entered into unsuccessful settlement discussions, with the defendants expressing a willingness to pay "nominal damages" to Feeney and McCoy but an unwillingness to address the plaintiffs' additional request that they admit the Old Plan had been unconstitutional.  The court ultimately granted the defendants an extension for responding to the summary judgment motion, allowing them to file their opposition after a bench trial on the plaintiffs' claims for prospective relief.

Over the course of four rulings between 1999 and 2003, the district court rejected all of the plaintiffs' claims for prospective relief.  BCF I, 62 F. Supp. 2d at 262; BCF II, 98 F. Supp. 2d at 117; BCF III, 183 F. Supp. 2d at 395-401; BCF IV, 260 F. Supp. 2d at 334.  In the last of these rulings, following the bench trial, the court upheld the New Plan against the plaintiffs' equal protection challenge and declined to retain jurisdiction to ensure that BPS did not return to using race in its seat assignment policy.  BCF IV, 260 F. Supp. 2d at 330-34.  The court concluded by noting that

> [P]laintiffs should not underestimate what they have accomplished.  By bringing this lawsuit, they have persuaded the School Committee to abandon a constitutionally dubious school admissions policy. Plaintiffs have not obtained all of the relief they sought, principally because the court believes that their ultimate goal, mandatory neighborhood school assignments . . . is not constitutionally compelled.

Id. at 334.

With the plaintiffs' claims for prospective relief thus resolved, the parties returned to the issue of nominal damages. In their May 21, 2003 response to the plaintiffs' motion for summary judgment, the defendants again conceded that Feeney and McCoy had been denied seats based on their race and indicated that they were "willing to have this Court enter judgment awarding nominal damages to these plaintiffs." However, asserting that no damages may be awarded absent the deprivation of a constitutional right, the defendants opposed a nominal damages award for the eight plaintiffs who had not shown that they were deprived of a seat based on their race. The defendants also urged the court not to address the constitutionality of the Old Plan.

The court's May 27, 2003 ruling on the motion for summary judgment awarded nominal damages to Feeney and McCoy on the grounds that they "were denied seat assignments at their preferred schools because of their race" but without expressly stating whether the Old Plan was unconstitutional. BCF V, at 1. Stressing that nominal damages may not be awarded "absent the deprivation of a constitutional right," the court denied damages to the remaining plaintiffs, who could "make no showing of a deprivation under Texas v. Lesage, 528 U.S. 18, 21 (1999) (per curiam)." BCF V, at 1. Although the plaintiffs who were denied damages appealed that denial, the defendants did not cross-appeal from the nominal damages award.

The plaintiffs then moved for attorney's fees under 42 U.S.C. § 1988(b), which provides that in a federal civil rights suit, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  The district court acknowledged that "a plaintiff who wins an award of nominal damages is properly deemed a 'prevailing party.'" Nevertheless, it denied any attorney's fees, concluding that:

> While "hollow" may be too harsh a word, a one dollar nominal award to two of ten original plaintiffs, the entitlement to which was conceded by the defendants from the virtual outset in an otherwise unsuccessful lawsuit, will simply not bear the weight of the policy that Congress intended to promote by enacting section 1988.

This appeal followed.

**II.**

Because a trial judge familiar with the intricacies of a case is in the best position to evaluate a motion for attorney's fees, we review the denial of such a motion for manifest abuse of discretion.  See Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 124 (1st Cir. 2004).  Accordingly, we "confine our review to whether the district court has made a mistake of law or incorrectly weighed (or failed to weigh) a factor in its decision."  Richardson v. Miller, 279 F.3d 1, 3 (1st Cir. 2002); see also Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292-93 (1st Cir. 2001) ("Apart from mistakes of law . . . we will set aside a fee award only if it clearly appears that the trial court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated

-7-

all the proper factors (and no improper ones), but made a serious mistake in weighing them.").

## A.        Fee-shifting pursuant to 42 U.S.C. § 1988

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Congress, however, has created exceptions to this "American Rule," permitting fee-shifting in some contexts to encourage meritorious litigation that benefits the plaintiff and the public interest. See Blanchard v. Bergeron, 489 U.S. 87, 96 (1989). 42 U.S.C. § 1988 is one such exception. As previously noted, § 1988(b) provides that in federal civil rights actions, including those brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Section 1988 requires a two-part inquiry: (1) whether the plaintiff is a prevailing party, and (2) if the plaintiff is a prevailing party, what constitutes a reasonable fee award. See, e.g., Farrar v. Hobby, 506 U.S. 103, 114 (1992). The first inquiry has substantial implications because, despite § 1988's discretionary language, we have interpreted the statute to mean that "'awards in favor of prevailing civil rights plaintiffs are virtually obligatory.'" Díaz-Rivera, 377 F.3d at 124 (quoting Gay Officers Action League, 247 F.3d at 293); see also Casa Marie Hogar

-8-

Geriatrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994) ("prevailing plaintiff is presumptively entitled to fee-shifting" in a civil rights case). Still, a court may properly deny a prevailing party's motion for attorney's fees if circumstances of the case would make a fee award unjust. Farrar, 506 U.S. at 118 (O'Connor, J., concurring); Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

## B.        Prevailing party status

To prevail, a party must "'succeed on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit.'" Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). A voluntary change in conduct due to the filing of the suit itself is not sufficient to confer prevailing party status. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 600-10 (2001) (rejecting the "catalyst theory" as a basis for prevailing party status); New Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 29-30 (1st Cir. 2002). Rather, the benefit achieved must be a "judicially sanctioned change in the legal relationship between the parties." Buckhannon, 532 U.S. at 605.

The district court correctly concluded that prevailing party status cannot be based on the School Committee's decision to amend the Old Plan, and plaintiffs do not argue to the contrary. Although eliminating race in the seat assignment plan was one of

-9-

the plaintiffs' central goals in bringing the suit, a fee award based on the School Committee's voluntary actions would rest on the "catalyst theory" that the Supreme Court explicitly rejected in Buckhannon. See 532 U.S. at 610. The plaintiffs claim instead that the nominal damages award makes them a prevailing party. We agree.

The Supreme Court has held that "a plaintiff who wins nominal damages is a prevailing party under § 1988." Farrar, 506 U.S. at 112. This holding recognizes that nominal damages are a "material alteration of the legal relationship between the parties" because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." Id. at 113. Here, the district court ordered the defendants to pay nominal damages to two plaintiffs, Feeney and McCoy. As Farrar recognized, that order "materially alter[ed] the legal relationship between the parties," and thus conferred prevailing party status on the plaintiffs. Id. at 112.

In support of their argument that our case law dictates a contrary result on the prevailing party issue, the defendants cite Maine School Administrative District No. 35 v. Mr. R., 321 F.3d 9 (1st Cir. 2003). There, we explained that "the change effected [by the plaintiff's success] must be material; a purely

technical or de minimis victory cannot confer prevailing party status." Id. at 15; see also Farrar, 506 U.S. at 111-12 ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). It is true that many of our cases, including Maine School Administrative District No. 35, consider the "technical" or "de minimis" nature of a victory as part of the prevailing party inquiry, rather than in determining what constitutes a reasonable award. 231 F.3d at 15. However, the Supreme Court's holding in Farrar precludes any argument that an award of nominal damages is "a purely technical or de minimis victory" that bars prevailing party status. Id.

In Farrar, the Court specifically considered "whether a nominal damages award is the sort of 'technical,' 'insignificant' victory that cannot confer prevailing party status." 506 U.S. at 113-14. As we have already discussed, the Court answered this question in the negative, concluding that nominal damages effect a material change and therefore confer prevailing party status. The "'technical' nature of a nominal damages award" bears instead on the reasonableness of the fees awarded rather than on prevailing party status, and the district court's analysis proceeded accordingly. Id. at 114.

## C. Reasonable attorney's fee

The plaintiffs emphasize that we are "virtually obligat[ed]" to grant a fee award to a prevailing party. Gay Officers Action League, 247 F.3d at 293. However, as Farrar itself acknowledges, "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." 506 U.S. at 115.

Farrar was a § 1983 civil rights suit in which a plaintiff sought $17 million in damages against six defendants who had allegedly conspired to violate his due process rights. A jury found that one of the defendants had "committed an act or acts under color of state law that deprived [Farrar] of a civil right," but that this conduct was not a proximate cause of his damages. 506 U.S. at 106. The district court awarded Farrar $1 in nominal damages and $280,000 in attorney's fees. The Fifth Circuit reversed the fee award, finding that Farrar's victory was too insignificant to confer prevailing party status under § 1988.

The Supreme Court disagreed with the Fifth Circuit's reasoning but affirmed the fee award reversal. It held that Farrar was not entitled to fees, despite the fact that the nominal damages award conferred prevailing party status. The Court explained that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Id. at 114 (citation and internal quotation marks omitted). Where Farrar sought $17

-12-

million in compensatory damages but received only $1 in nominal damages, he obtained such a small degree of success as to make "the only reasonable fee . . . no fee at all." Id. at 115.

Justice O'Connor wrote separately to explain the relationship between nominal damages and a fee award. While "[n]ominal relief does not necessarily a nominal victory make[,] . . . a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Id. at 121. Other relevant factors include "the significance of the legal issue on which the plaintiff claims to have prevailed" and whether the success furthered a public purpose. Id. at 121-22; see also O'Connor v. Huard, 117 F.3d 12, 18 (1st Cir. 1997) (recognizing similar considerations). Where the district court has properly weighed the foregoing factors, there is no abuse of discretion to merit a reversal. See id.

Here, the court explained its denial of fees in an eight-page ruling that reviewed the course of the litigation and set forth the relevant law. It concluded that the nominal damages award, "the entitlement to which was conceded by the defendants from the virtual outset," was too de minimis a victory in relation to the plaintiffs' other claims to merit a fee award. See Farrar, 506 U.S. at 114; Me. Admin. Sch. Dist. No. 35, 321 F.3d at 14-15 (fee award cannot be based on a "hollow victory"). The plaintiffs

-13-

claim that this ruling was an abuse of discretion because it failed to recognize the significance of the nominal damages award -- namely, that the award included an implicit finding that the Old Plan was unconstitutional and would thus have a preclusive effect if the defendants attempted to revive the Plan. The defendants contend that the award did not include such a finding.

We acknowledge that the language of the decision explaining the nominal damages award is susceptible to both parties' readings. The court said the following:

> John Feeney[, Jr.] and Kathleen McCoy were denied seat assignments at their preferred schools because of their race. For that reason they are entitled to an award of nominal damages, and defendants do not contend otherwise. Defendants are correct, however, that absent the deprivation of a constitutional right, nominal damages may not be awarded. See Carey v. Piphus, 435 U.S. 247, 266-67 (1978). As the remaining plaintiffs can make no showing of a deprivation under Texas v. Lesage, 528 U.S. 18, 21 (1999) (per curiam), no damages, nominal or otherwise, may be awarded.

BCF V, at 1. Although the nominal damages judgment does not specify that the Old Plan was unconstitutional, the plaintiffs assert that such a finding was necessarily implicit in light of the court's own statement that nominal damages must be premised on a constitutional injury. Losing a seat assignment because of race is not, per se, a constitutional deprivation. Race-conscious policies are permissible if they are narrowly tailored to serve a compelling governmental interest, which may include remedying past discrimination, City of Richmond v. J.A. Croson Co., 488 U.S. 469,

-14-

507 (1989) (considering whether Richmond's race-conscious plan for city construction contracts was "narrowly tailored to remedy prior discrimination"), or achieving educational diversity, Grutter v. Bollinger, 539 U.S. 306, 343 (2003) ("[T]he Equal Protection Clause does not prohibit the [University of Michigan] Law School's narrowly tailored use of race in admissions to further a compelling interest in obtaining the educational benefits that flow from a diverse student body."). Thus, the plaintiffs reason, the defendants' concession about the role of race in the plaintiffs' seat assignments does not, standing alone, admit the constitutional violation required to support an award of nominal damages. The deprivation was unconstitutional only if the assignment plan was not narrowly tailored to serve a compelling interest, or, in other words, if the Old Plan was unconstitutional.

Yet, the nominal damages decision does not address the issues of compelling interest and narrow tailoring that would be integral to a fully developed legal analysis of the constitutionality of the Old Plan. Nor did the court explicitly state that Feeney and McCoy had suffered a constitutional injury. Its comment that nominal damages require such an injury was not an explanation for Feeney and McCoy's award, but rather for the denial of damages to the remaining plaintiffs. See BCF V, at 1. Indeed, the only basis that the court cited for Feeney and McCoy's award was their loss of seats because of their race -- the point conceded

-15-

by the defendants.  This language suggests that the award did not include a finding that the Old Plan was unconstitutional.

We recognized this ambiguity in the nominal damages decision when we considered the merits of this case on appeal, noting that "[a]lthough the district court never explicitly described the Old Plan as unconstitutional, . . . nominal damages in this context require a constitutional violation."  Anderson, 375 F.3d at 80 n.12.  Based on this logic, we accepted "the colorable premise that the Old Plan was unconstitutional" for the purposes of our analysis.[8]  Id.  However, the court's ruling, if any, on the constitutionality of the Old Plan was not directly before us in that appeal.  Now that we must decide in the context of this attorney's fees appeal whether the court, in fact, ruled on the constitutionality of the Old Plan, we conclude that there was no such ruling.  Instead, the court awarded nominal damages on the basis of the defendants' concession, which acknowledged the dispositive effect of race in the school assignments of Feeney and McCoy, but which rejected any conclusion that the Old Plan was unconstitutional.

---

[8]In the appeal on the merits, the plaintiffs argued that the unconstitutionality of the Old Plan required a presumption that the New Plan was also motivated by a racially discriminatory purpose. We declined to adopt such a presumption, noting that even if the Old Plan had been unconstitutional, "BPS voluntarily discontinued the use of the Old Plan once it concluded that the Plan was constitutionally suspect . . . and replaced it with a racially neutral assignment system . . . ."  Anderson, 375 F.3d at 84-85.

This conclusion is compelled by the following considerations:

(1) The constitutionality of the Old Plan was not actively litigated; the court refused to consider injunctive or declaratory relief regarding the Old Plan once the New Plan was in place. Indeed, the court's description of the Old Plan as "constitutionally dubious" in a ruling denying prospective relief one month before the nominal damages award, BCF IV, 260 F. Supp. 2d at 334, signals that it did not consider the constitutionality of the Old Plan a resolved question.

(2) The defendants' motion opposing summary judgment, filed soon after the decision denying prospective relief, recognized that a finding on the constitutionality of the Old Plan would require the court to try issues that it had not previously considered and therefore urged the court to award damages without reaching the constitutional issue. In essence, the defendants expressed a willingness to pay nominal damages to Feeney and McCOy without admitting any constitutional injury. As we have discussed, the language of the ensuing award is consistent with this position.

(3) Any remaining ambiguity on this point is resolved by the district court's decision denying attorney's fees. There, the court described the basis for the plaintiffs' prevailing party status as "a one dollar nominal award to two of ten original plaintiffs, the entitlement to which was conceded by the defendants

-17-

from the virtual outset . . . ." (emphasis added). Again, the defendants had conceded only that they were willing to pay damages because Feeney and McCoy were denied seats based on their race, not because the Old Plan was unconstitutional. The district court's description of its own judgment thus forecloses the plaintiffs' argument that it found the Old Plan unconstitutional.

Viewed in this light, the nominal damages award does not represent a victory on a significant legal issue. To the contrary, it represents such a minimal success in the context of this litigation that the district court supportably concluded that "the only reasonable fee is . . . no fee at all." <u>Farrar</u>, 506 U.S. at 115. The district court did not abuse its discretion in denying attorney's fees.

**<u>Affirmed.</u>**