**Albertha BOGAN, Individually and as Guardian and Next Friend of Tyla, Eryn and Chad Bogan, Plaintiffs,**

v.

**CITY OF BOSTON, Kevin Joyce, Luis Arjona, James Holmes and Regina Hanson, Defendants.**

**Civil Action No. 02–10522–MBB.**

United States District Court, D. Massachusetts.

May 11, 2006.

Harold Jacobi, III, Nancy Sue Keller, Jacobi & Associates PA, Lexington, MA, for Plaintiff.

Elizabeth L. Bostwick, Thomas R. Donohue, City of Boston Law Department, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER RE: PLAINTIFFS' RULE 54 MOTION FOR FEES AND COSTS (DOCKET ENTRY # 137); DEFENDANT'S MOTION TO PRECLUDE PLAINTIFFS' ATTORNEYS FROM RECEIVING FEES AND COSTS AFTER THE CITY'S MARCH 10, 2005 OFFER OF JUDGMENT—PURSUANT TO FED. R. CIV. P. 68*

*(DOCKET ENTRY # 148 )*

BOWLER, United States Magistrate Judge.

Pending before this court are two motions regarding attorneys' fees and costs in the above styled civil rights action. The first motion, filed by plaintiff Albertha Bogan ("Albertha Bogan"), individually and as guardian and next friend of Tyla, Eryn and Chad Bogan (collectively: "plaintiffs"), is for attorneys' fees and costs. (Docket Entry # 137). Defendant City of Boston ("the City") opposes the motion. (Docket Entry # 149). Plaintiffs filed a reply to the City's opposition. (Docket Entry # 150). The second motion, filed by the City, is to preclude plaintiffs from recovering fees and costs after March 20, 2005. Plaintiffs oppose the motion. (Docket Entry # 151). After conducting a hearing on March 13, 2006, this court took the motions (Docket Entries # # 137 & 148) under advisement.

Plaintiffs request attorneys' fees and costs pursuant to 42 U.S.C. § 1988 ("section 1988") and Rule 54, Fed.R.Civ.P. 54 ("Rule 54"), respectively. The jury found in favor of plaintiffs and against the City on the 42 U.S.C. § 1983 ("section 1983") claim on October 27, 2005. The City seeks to preclude fees after March 20, 2005, pursuant to Rule 68, Fed.R.Civ.P. 68 ("Rule 68"). The motions (Docket Entries # # 137 & 148) are therefore ripe for review.

*PROCEDURAL HISTORY*

On March 22, 2002, plaintiffs filed a complaint against defendants the City, the Boston Police Department ("BPD"), the Boston Fire Department ("BFD"), the City of Boston Inspectional Services Department ("ISD"), Mayor Thomas M. Menino ("Mayor Menino"), Kevin Joyce ("Joyce"), Luis Arjona ("Arjona"), James Holmes ("Holmes"), Regina Hanson ("Hanson"), the Neighborhood Development Corporation of Grove Hall ("NDC") and Virginia Morrison ("Morrison") (collectively: "defendants") for damages pursuant to section 1983 and Massachusetts General Laws chapter 258, section 4 ("chapter 258"). (Docket Entry # 1).

Plaintiffs' eight count complaint against defendants sought recovery for trespass, wrongful conversion of real property, wrongful conversion of personal property, violations of chapter 258, violations of section 1983, invasion of privacy, harassment and emotional distress. (Docket Entry # 1).

Morrison and NDC filed a motion for summary judgment on January 29, 2004. (Docket Entry # 30). On January 30, 2004, Arjona, BFD, BPD, the City, ISD, Hanson, Holmes, Joyce and Mayor Menino also filed a separate motion for summary judgment. (Docket Entry # 34). No hearings were held for these motions (Docket Entries # # 30 & 34).

On July 22, 2004, the court issued an Order and dismissed all counts against the City except the section 1983 claim. (Docket Entry # 46). The court also dismissed all counts against ISD, BFD, BPD and Mayor Menino. (Docket Entry # 46). Claims under chapter 258, violations of

section 1983 and harassment were dismissed against Joyce, Hanson, Holmes and Arjona. (Docket Entry # 46). The court granted plaintiffs leave to amend the complaint to name Joyce, Arjona, Holmes and Hanson in their personal capacities within 20 days.[1] (Docket Entry # 46). An Electronic Order was entered that dismissed all claims against NDC and Morrison on the same day.

On August 16, 2004, plaintiffs filed a motion for the court to reconsider the summary judgment orders that dismissed the claims against Mayor Menino, NDC and Morrison. (Docket Entry # 48). The court entered an Order denying this motion on August 19, 2004. Plaintiffs filed a notice of appeal of the summary judgment decisions in favor of Mayor Menino, NDC and Morrison on September 17, 2004. (Docket Entry # 49). Thereafter, plaintiffs filed a motion to voluntarily dismiss the appeal on October 27, 2004.[2] (Docket Entry # 53).

At the January 21, 2005 final pretrial conference,[3] the court ordered bifurcation of the section 1983 claim against the City from the state law tort claims against Joyce, Arjona, Holmes and Hanson. On March 10, 2005, the City served plaintiffs with an offer of judgment pursuant to Rule 68 in the amount of $50,000 for any and all claims, damages and injuries suffered by plaintiffs. (Docket Entry # 148, Ex. A). This offer was inclusive of all interest, costs and attorneys' fees that accrued or that might have been assessed by the court. (Docket Entry # 148, Ex. A). The offer was also contingent upon judgment entering against the City only and the dismissal with prejudice of all claims against Joyce, Hanson, Holmes and Arjona. (Docket Entry # 148, Ex. A). Plaintiffs did not accept this offer within ten days. (Docket Entry # 148).

At the May 9, 2005 final pretrial conference,[4] the court informed the parties that Joyce would be tried (for the state law tort claims) along with the City (for the section 1983 claim) in the first trial for this matter. Upon the consent to jurisdiction by a United States Magistrate Judge on September 8, 2005, the case was reassigned to this court for all purposes including trial and entry of final judgment on September 12, 2005.

A jury trial against the City and Joyce commenced on October 17, 2005, before this court and continued for eight days. The jury found in favor of plaintiffs and against the City on the section 1983 claim on October 27, 2005. (Docket Entry # 131). On this claim, the jury awarded Albertha Bogan $15,000, and Tyla, Eryn and Chad Bogan $5,000 each, for a total of $30,000. (Docket Entry # 131). As to the state law tort claims against Joyce, the jury found that plaintiffs failed to establish the necessary elements of intentional infliction of emotional distress, invasion of privacy, conversion and trespass and, thus, Joyce was not found liable to plaintiffs for any damages for these claims. (Docket Entry # 131).

---

1. Plaintiffs never filed a motion to amend the complaint. Both parties impliedly consented to proceed to trial against both the City and Joyce with the understanding that the bifurcated claims against Arjona, Hanson and Holmes would be addressed at a later date. *See* Fed.R.Civ.P. 15(b).

2. On the next day, the First Circuit dismissed the notice of appeal for failure to file a timely response to the court's direction to show cause in writing by October 15, 2004, as to why the appeal should not be dismissed for lack of jurisdiction. (Docket Entry # 52).

3. Additional final pretrial conferences took place on April 11, 2005; May 9, 2005; and September 26, 2005.

4. See previous footnote.

Having heard arguments from the parties regarding the need for a second trial at a status conference on November 8, 2005, this court ordered the submission of briefs on the issue. On November 22, 2005, plaintiffs filed a memorandum of law in support of a second trial. (Docket Entry # 134). On the same day, Joyce, Arjona, Holmes, Hanson and the City filed a brief addressing double recovery and moved to dismiss the remaining claims as duplicative. (Docket Entry # 135).

After a hearing on November 30, 2005, this court dismissed the remaining state law tort claims against Arjona, Holmes and Hanson in a Memorandum and Order on December 8, 2005. (Docket Entry # 136). This court also directed plaintiffs to file a motion for attorneys' fees properly supported with contemporaneous and adequately detailed records on or before January 3, 2006, in the event the parties proved unable to agree upon a stipulated amount. (Docket Entry # 136).

Plaintiffs filed the motion for attorneys' fees and costs (Docket Entry # 137) with supporting affidavits (Docket Entries # # 138–141) [5] on January 3, 2006. Plaintiffs allege that because they are prevailing parties under section 1988 and Rule 54, they are entitled to reasonable attorneys' fees and costs in the amount of $126,700.83.[6]

The City filed a motion on January 13, 2006, to extend the time until January 31, 2006, to oppose plaintiffs' motion for fees and costs. (Docket Entry # 147). This court allowed the extension on January 18, 2006.[7]

On January 31, 2006, the City filed a motion to Preclude Plaintiffs' Attorneys from Recovering Fees and Costs after the City's March 10, 2005 offer of judgment— Pursuant to Rule 68. (Docket Entry # 148). The City contends that, pursuant to Rule 68, plaintiffs are not entitled to recover fees or costs after the City's offer of judgment for $50,000 (Docket Entry # 148, Ex. A) was not accepted by plaintiffs and plaintiffs went on to recover less than the offer at trial (only $30,000). Plaintiffs filed an opposition to this motion on February 17, 2006. (Docket Entry # 151).

The City also filed an opposition to plaintiffs' motion for attorneys' fees and costs (Docket Entry # 137). (Docket Entry # 149). The City contends that plaintiffs' fee petition provides no basis for recovery of fees because: (1) the fee petition is not contemporaneous; (2) the fee petition is not "adequately detailed;" (3) billed time is attributable to other dismissed defendants and not the City; (4) items are double billed; (5) unnecessary hours and services were billed extensively; (6) plaintiffs failed to use the lodestar ap-

5. The affidavits in support of plaintiffs' motion consisted of affidavits from Attorney Harold Jacobi ("Attorney Jacobi") (Docket Entry # 138), Attorney Nancy Sue Keller ("Attorney Keller") (Docket Entry # 139), Attorney J. Owen Todd ("Attorney Todd") (Docket Entry # 140) and Attorney Bruce Singal ("Attorney Singal") (Docket Entry # 141). In addition, an affidavit from Attorney Stephen Greenbaum was filed on January 13, 2006. (Docket Entry # 144).

6. Attached to the affidavits of Attorney Jacobi and Attorney Keller are copies of the same

bill for work performed (including attorneys' fees and costs) for plaintiffs by Jacobi & Associates, P.A. (Docket Entries # # 138 & 139, Ex. 1).

7. The City inadvertently filed the wrong document on January 13, 2006 (Docket Entry # 145), but the correct copy was filed on January 17, 2006 (Docket Entry # 147). This court issued an Electronic Order withdrawing the incorrect document (Docket Entry # 145) on January 18, 2006.

proach appropriately in determining a reasonable fee because the hourly rate and the hours recorded are excessive; and (7) prejudgment interest should not be awarded as it was not submitted to the jury during the trial. (Docket Entry # 149). In addition, the City requests that the amount awarded should be substantially reduced. (Docket Entry # 149, p. 36). Plaintiffs filed a response to the City's opposition on February 17, 2005. (Docket Entry # 150).

## DISCUSSION

Traditionally, the prevailing party in a civil action is required to bear his or her own attorneys' fees and costs. *Boston's Children First v. City of Boston*, 395 F.3d 10, 13–14 (1st Cir.2005) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Congress has created statutory exceptions to this traditional rule. One exception is for civil rights suits. An attorneys' fee award in a civil rights suit "is intended to compensate prevailing plaintiffs for the time and expense required to vindicate their federally protected civil rights." *Powell v. Alexander*, 391 F.3d 1, 24 (1st Cir.2004). Thus, "[I] n federal civil rights actions ... 'the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.'" *Boston's Children First v. City of Boston*, 395 F.3d at 14 (quoting section 1988); *see also Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Section 1983 is a qualified civil rights statute under section 1988. *Maine v. Thiboutot*, 448 U.S. 1, 11, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

■ Section 1988 requires that plaintiffs are prevailing parties and, if determined to be in the affirmative, a detailed evaluation of "reasonable" attorneys' fees to be awarded to the successful plaintiff. *Bos-*

*ton's Children First v. City of Boston*, 395 F.3d at 14 (citing *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). A prevailing plaintiff is a party that succeeds in civil litigation and achieves a benefit sought by bringing the suit. *Boston's Children First v. City of Boston*, 395 F.3d at 14 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Plaintiffs clearly fall under the definition of prevailing parties as they received a jury verdict in their favor against the City and received damages of $30,000 (in total) for a section 1983 civil rights claim. The City has not contested this issue and this court finds that plaintiffs are prevailing parties within the meaning of section 1988.

This court is required to conduct an analysis of what a reasonable attorneys' fees award should constitute. Prevailing civil rights plaintiffs are practically guaranteed reasonable attorneys' fees. *Diaz–Rivera v. Rivera–Rodriguez*, 377 F.3d 119, 124 (1st Cir.2004) (citing *Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.3d 288, 293 (1st Cir.2001)).

■ The City challenges plaintiffs' attorneys' bill for fees and costs as being not contemporaneous. The First Circuit has held that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984); *accord Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 8 (1st Cir.1993). The bill provided by plaintiffs (Docket Entries # # 138 & 139, Ex. 1) is deemed contemporaneous by this court due to the detailed nature of the tasks described and the clear evidence that this bill was not constructed simply for the

motion for attorneys' fees and costs.[8]

■ To determine an appropriate attorneys' fee award, the First Circuit has adopted what is known as the "lodestar" approach. *Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d at 295 (citing *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. 1933); *see also United States ex rel. Averback v. Pastor Medical Associates P.C.,* 224 F.Supp.2d 342, 348 (D.Mass.2002). The lodestar approach is a starting point to accurately determine an appropriate award of attorneys' fees and uses the reasonable number of hours expended on the litigation and multiplies that number of hours by a reasonable hourly rate. *Id.*

■ The first step of the lodestar analysis requires an evaluation of the reasonable hourly rate charged by plaintiffs' attorneys. *See Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d at 295 (citing *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. 1933). This court needs to consider the "prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Id.; see also Parker v. Town of Swansea,* 310 F.Supp.2d at 388 (" 'the Court must find the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation' ") (quoting *Martino v. Massachusetts Bay Transportation Authority,* 230 F.Supp.2d 195, 205 (D.Mass. 2002)).

■ Plaintiffs bear the burden of providing affidavits that establish their attorneys' skills and experience, while also providing information regarding the pre-

vailing market rate in Boston for similarly experienced lawyers. *Blum v. Stenson,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541; *accord Parker v. Town of Swansea,* 310 F.Supp.2d at 388. This court "should not accept attorney submissions at face value but rather should assign more realistic rates to time spent." *Guckenberger v. Boston University,* 8 F.Supp.2d 91, 103 (D.Mass.1998); *accord Parker v. Town of Swansea,* 310 F.Supp.2d at 388; *see also Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d at 8 ("a district court . . . is not bound by the hourly rate requested by the victor's counsel; rather, the court may establish a rate that it considers reasonable based on counsel's skill and experience and prevailing market rates"). Plaintiffs provided affidavits from five Boston attorneys. (Docket Entries # # 138–141 & 144).

■ Attorney Jacobi billed plaintiffs $350 per hour for his time involved in this manner. (Docket Entry # 137, p. 4). The City requests that this rate be reduced to $200 per hour. (Docket Entry # 149, p. 11). Attorney Jacobi has been practicing law for over 35 years (Docket Entry # 138, ¶ 2) and has been billing clients $350 per hour for over ten years (Docket Entry # 138, ¶ 2). He has been a partner at Jacobi & Associates, P.A. for over 25 years. (Docket Entry # 138, ¶ 3). Attorney Todd bills clients upwards of $425 per hour as a partner at another Boston law firm and has significantly more experience than Attorney Jacobi. (Docket Entry # 140, ¶ 7). Attorney Singal, a partner at another Boston law firm, bills clients upwards of $390 per hour for litigation mat-

---

**8.** The City also argues that the bill submitted by plaintiffs is not "adequately detailed." (Docket Entry # 149, pp. 4–5). Contrary to the City's position, the submissions are adequately detailed in compliance with this court's Order as well as the relevant case law.

*See Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. 1933; *Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d at 297 (time records must be "kept in reasonable detail").

ters. Attorney Jacobi, however, appeared to this court to have a limited involvement and was not present at any time during the eight day trial. Accordingly, Attorney Jacobi's billing rate is reduced to $300 per hour.

■ The City also challenges the rate of $200 per hour charged for the work of Attorney Keller (Docket Entry # 137, p. 4).[9] (Docket Entry # 149, p. 11). Ironically, however, the City cites case law that supports plaintiffs' position: "Plaintiffs' lead attorneys in civil rights cases in Boston have recently been awarded hourly rates ranging from $200.00 to $250.00 per hour." (Docket Entry # 149, p. 9) (citing *Martinez v. Hodgson*, 265 F.Supp.2d 135, 143 (D.Mass.2003)). Clearly, Attorney Keller was the "lead attorney" in this matter.[10] Although Attorney Jacobi was not present at any time during the eight day trial, Attorney Keller performed admirably and diligently in his absence. Moreover, while she lacks the years of experience of more veteran attorneys, this is accounted for by billing her time at the lowest end of the appropriate spectrum. In addition, Attorney Todd stated that as a partner, he charges between $200 and $210 per hour for litigation associates with between three and four years of experience. (Docket Entry # 140, ¶ 8). Attorney Signal also stated that he charges similar rates. *See* Docket Entry # 141, ¶¶ 10–11. Attorney Keller's rate of $200 per hour is therefore reasonable and accepted by this court.

The City further challenges the rate charged by support staff (a summer associate and a paralegal) of $65 per hour. Given the acceptance of $60 per hour by the court in *Martinez* as reasonable for time billed for law students' work in 2003 in the Boston area, a rate of $65 per hour is completely reasonable in this matter and accepted by this court. *Martinez v. Hodgson*, 265 F.Supp.2d 135, 146 (D.Mass.2003).

Therefore, the affidavits provide sufficient evidence of the prevailing market rates in Boston for similarly situated attorneys to the ones involved in this case.[11] Therefore, the rates articulated in the motion for fees and costs (Docket Entry # 137, p. 4) are accepted by this court as reasonable hourly rates, except that Attorney Jacobi's rate is reduced to $300 per hour.

■ The second step of the lodestar method requires a determination of the reasonable number of hours spent on the litigation. When evaluating the reasonable number of hours, plaintiffs cannot recover attorneys' fees for "duplicative, unproductive, or excessive hours." *Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.3d at 295. Plaintiffs submitted a detailed list of hours expended on this matter (Docket Entries # # 138 & 139, Ex. 1) and stated that hours that fall into this unrecoverable category have been properly excluded (Docket Entry # 137, p. 4).[12]

This court has reviewed the detailed list of hours (Docket Entries # # 138 & 139,

9. Since the time expended after March 20, 2005, pursuant to Rule 68, is excluded, as explained *infra*, her "raise" to $250 per hour in September 2005 is now moot and does not need to be discussed.

10. While the docket lists Attorney Jacobi as "LEAD ATTORNEY," it is clear to this court that Attorney Keller was the lead attorney (in fact) for this matter.

11. The City does not challenge the rates charged by any other attorney or staff member in this case. (Docket Entry # 149).

12. The hours that were not included by plaintiffs are marked "NO CHARGE" on the bill. (Docket Entries # # 138 & 139, Ex. 1).

Ex. 1) and, as explained below, excludes a number of hours that are unreasonable. *See Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.3d at 295–296 ("In fashioning fee awards, the attorneys' contemporaneous billing records constitute the usual starting point, but the court's discretion is by no means shackled by those records"). In particular, this court has conducted an extensive review of the number of hours submitted by plaintiffs' counsel (and the City's objections thereto) and has excluded certain categories of time expended by plaintiffs' attorneys. Due to the City's motion to preclude fees after the Rule 68 offer of judgment was not accepted by the plaintiffs, this court will first determine the reasonable number of hours expended before the nonacceptance.

■ First, this court deems that hours spent prior to the filing of the initial complaint should be excluded from the fee award. The time period from March 1999 to December 2001 was spent dealing with issues that were not related to the civil rights litigation. The civil complaint for this matter (Docket Entry # 1) was not filed until March 22, 2002. *See Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.3d at 296 ("[T]he court sharply reduced the number of hours claimed" prior to the filing of the complaint). This work also was related to various administrative procedures and hearings that were not directly interconnected to the civil rights litigation. *See Webb v. County Board of Education*, 471 U.S. 234, 241, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (section 1983 does not require

plaintiffs to exhaust administrative remedies prior to bringing civil rights suit and section 1988 provides attorneys' fees only for court related successes). Therefore, this court excludes all hours prior to January 2002.

■ Second, there are several hours that this court excludes as unconnected to the civil rights action against the City in which plaintiffs prevailed. Plaintiffs originally sued 11 parties. Of those defendants, six were dismissed prior to trial. Time spent dealing with matters that related to the dismissed parties are excluded, as plaintiffs did not prevail against the dismissed parties. *See Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. 1933 ("The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]"); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir.1997) ("The court can segregate [and exclude] time spent on certain unsuccessful claims"); *see also Parker v. Town of Swansea*, 310 F.Supp.2d 376, 394 (D.Mass.2004) (" '[I]f unsuccessful claims are unconnected to, and easily severable from, the successful claims, hours spent on them will not be compensable' ") (quoting *Martinez v. Hodgson*, 265 F.Supp.2d at 141).[13]

■ Third, plaintiffs have failed to distinguish between core and non-core activities. Core work is considered to be tasks that require the special skill of lawyers and involves "independent legal thought."[14] *Alfonso v. Aufiero*, 66

13. This excluded time includes matters billed on: November 6, 2002; May 1 (second entry), 13 and 14, 2003; June 6–23, 2003; October 13–14 and 29, 2003; November 3, 2003; December 3 and 9 (second and third entries), 2003; August 16 and 20, 2004; September

17, 2004; October 26–29, 2004; and November 18, 2004. *See* Docket Entries # # 138 & 139, Ex. 1.

14. Core work includes legal research, writing of legal documents (drafting and editing legal

F.Supp.2d 183, 196 (D.Mass.1999). Non-core legal work "consists of less demanding tasks." [15] *Brewster v. Dukakis,* 3 F.3d 488, 492 n. 4 (1st Cir.1993). Non-core work is billed at two-thirds of the determined reasonable rate for attorneys that is charged for core work. *Id.* at 492. Plaintiffs contend that all charged hours on the bill are core work (Docket Entry # 137, pp. 5–6), while the City challenges certain billed entries that should be considered non-core work (Docket Entry # 149, pp. 12 & 21–30). After taking into account plaintiffs' bill, in combination with the City's objections, this court further reduces the award to entail billed activities that should be categorized as non-core.[16]

██ Plaintiffs' bill contains some entries that are mixed between core and non-core activities and do not specify how much time was spent on each activity. Consistent with previous case law, mixed entries are equally divided into core and non-core hours.[17] *Alfonso v. Aufiero,* 66 F.Supp.2d at 197.

There is also an additional category of entries that consist of both unreasonable and reasonable hours with the additional inclusion of a mix of core and non-core activities within the reasonable hours therein. Entries that are a mix of appropriate hours and hours that should be excluded entirely are also handled in this same manner of equally dividing the time between recoverable and not recoverable time.[18] In addition, travel time is billed at the non-core rate and plaintiffs conceded travel time that was not categorized as such in the original bill submitted to this court (Docket Entries # # 138–139).

documents for submission to the court and defendants), court appearances, negotiations with opposing counsel, implementation of court orders, reviewing legal submissions of opposing parties, preparing for hearings and trial and preparing for and taking depositions. *Alfonso v. Aufiero,* 66 F.Supp.2d at 196.

15. Non-core work includes writing and reviewing correspondence, telephone calls (including calls to opposing counsel), consultations with third parties, meetings with plaintiffs other than those preparing for depositions or immediately before trial, responding to discovery requests, issuing subpoenas and noticing depositions, writing memoranda to the file, scheduling, travel and file review. *Alfonso v. Aufiero,* 66 F.Supp.2d at 196.

16. The following entries are considered non-core: March 25, 2002; May 3, 2002; July 27 and 31, 2002; August 13, 2002; September 3, 12 and 26, 2002; October 7, 2002; January 17 and 23 (second, fourth and fifth entries), 2003; March 18–19, 2003; April 28, 2003; May 7, 2003; July 2 and 7, 2003; September 24, 2003; October 24 and 28, 2003; December 9, 2003 (first complete entry and first and fourth entries in second complete entry); February 13 (second complete entry) and 23 (first

entry), 2004; September 9 (first, third and fourth entries) and 23, 2004; December 9, 2004; February 21 (first complete entry) and 23, 2005; and March 1, 2, 14 (first and third entries) and 15, 2005, for a total of $2,546.

17. The following entries were equally divided into core and non-core hours: January 10, 2002; April 26, 2002; June 24, 2002; August 21, 2002; September 19, 2002; October 3 and 17, 2002; December 12 and 13, 2002; January 16, 22 (first entry), 23 (first and third entries) and 31, 2003; February 21, 24 and 26, 2003; April 29, 2003; July 8, 2003; September 16 and 25, 2003; January 14, 2004; February 13, 2004; September 9, 2004 (second entry); November 15 (third entry) and 17, 2004; December 3, 2004; January 24 and 26, 2005; and February 3, 15, 16 (second entry) and 21, 2005, for a total of $10,380.50.

18. The following entries were divided as follows: May 2, 2003 (half core, half excluded); May 21, 2003 (half split between core and non-core, half excluded); November 7, 2003 (half split between core and non-core, half excluded); June 14, 2004 (half split between core and non-core, half excluded); July 23, 2004 (half core, half excluded); and August 9, 2004 (half core, half excluded), for a total of $1,128.24.

(Docket Entry # 150, p. 14). The remainder of the hours included in plaintiffs' bill are considered reasonable core activities and are appropriately included in the fee award.[19]

Accordingly, this court determines that the appropriate lodestar amount prior to plaintiffs' nonacceptance of the offer of judgment, taking into account all of the above findings and multiplying the reasonable number of hours expended by the reasonable hourly rate (accounting for the different categories of core vs. non-core hours), is $26,529.74.

 The City is further arguing for an adjustment of this amount. This court has the ability and discretion to adjust this total amount up or down depending on certain factors. *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 337 ("the trial court retains the authority to adjust the lodestar after initially computing it—but it must do so in accordance with accepted principles"). Once established, however, "the lodestar constitutes" "a presumptively reasonable fee." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir.1992). "The accepted factors of adjustment[20] were originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974), and have been adopted by the Supreme Court and the First Circuit." *See, e.g., Blanchard v. Bergeron*, 489 U.S. 87, 91–92, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 337 n. 3; *see also Edge v. Norfolk Financial Corp.*, 2005 WL 2323193 at *5 (D.Mass. Aug.29, 2005).

"[T]e Supreme Court has identified results obtained as a preeminent consideration in the fee-adjustment process." *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir.1997). The "results obtained" encompasses three meanings, to wit, " 'a plaintiff's success claim by claim,' 'the relief actually achieved,' and 'the societal importance of the right which has been vindicated.' " *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 198 (D.Mass.1999) (quoting *Coutin*, 124 F.3d at 338).

 Where, as here, the claims are interrelated inasmuch as they rest on the same set of common facts and plaintiffs prevailed on only a limited subset of those claims and achieved somewhat limited relief, a fee reduction is warranted. *Coutin*, 124 F.3d at 339; *see, e.g., Parker v. Town of Swansea*, 310 F.Supp.2d 376, 399 (D.Mass.2004) ("[t]he fact that Parker did not prevail against the majority of the defendants and on claims he clearly deemed an important part of his case,

---

**19.** These entries are: June 12, 2002; August 6 and 22, 2002; September 18 and 20, 2002; October 4 and 11, 2002; December 9, 2002; January 10 and 15, 2003; March 1, 2003; April 30, 2003; May 1, 2003; October 9, 2003; February 2, 11, 12, 18, 20 and 23 (second and third entries), 2004; June 10, 16, and 17, 2004; July 27, 2004; August 4, 2004; November 16 and 19, 2004; January 4, 2005; February 14, 16 (first entry) and 25, 2005; and March 3, 9 and 14 (second entry), 2005, for a total of $12,475.

**20.** These factors consist of the following: (1) the time and labor required; (2) the novelty and difficulty of questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 337 n. 3.

indicates that a reduction is appropriate"). The failed interrelated claims at trial were against Joyce and time at trial and preparing for trial was spent on arguments and claims in connection to Joyce. In addition, numerous other parties and interrelated claims were dismissed prior to trial. A claim by claim success analysis therefore militates in favor of sharply reducing the lodestar amount.

The relief actually achieved was somewhat limited but not unsubstantial taking into account the damages sought. That said, however, plaintiffs recovered only $30,000 collectively, an amount significantly less than the amount plaintiffs sought. Mindful that proportionality is not the rule, this court may nonetheless take the discrepancy "into reasonable account in massaging the lodestar." *Coutin*, 124 F.3d at 340. The relief actually achieved favors, albeit slightly, a reduction in the lodestar.

Finally, notwithstanding plaintiffs' contention that this case vindicated important societal rights, in reality the deterrent effect of this litigation (where plaintiffs achieved only limited success or relief against the City and no relief against the individual officers) is minimal. *See, e.g., Parker v. Town of Swansea*, 310 F.Supp.2d at 399 (noting, given the reasonable actions by the officers, that "case cannot be considered to be one involving great public significance beyond the borders of those involved"). In addition, given the nature of the emotional injuries on the part of the children as well as Albertha Bogan, it cannot be said that the case presented itself as a claim that might " 'not result in

substantial monetary compensation.' " *Alfonso v. Aufuero*, 66 F.Supp.2d at 199.

■ On balance and taking all of the factors of adjustment into consideration, the lodestar amount (for the time period prior to the nonacceptance of the City's offer of judgment) is reduced by 50 percent to $13,264.87.

Plaintiffs seek costs pursuant to Rule 54. The prevailing party is entitled to costs enumerated in 28 U.S.C. § 1920 and "reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client[.]" *Poy v. Boutselis*, 352 F.3d 479, 490 (1st Cir.2003); *see also Parker v. Town of Swansea*, 310 F.Supp.2d at 399. This court will first determine the appropriate costs prior to the Rule 68 offer of judgment.

Considering the determinations made above, this court excludes costs prior to 2002 (before the filing of the complaint). The City's objections to certain costs (Docket Entry # 149, pp. 32–33) were reviewed and costs pertaining to all parties (and their attorneys) not relating to the City are excluded.[21] All research costs are reduced by 50 percent because most of plaintiffs' claims were unsuccessful and plaintiffs did not provide sufficient detail to identify the subject matter of these charges. *See Parker v. Town of Swansea*, 310 F.Supp.2d at 400. Accordingly, costs are awarded to plaintiffs in the amount of $3,694.84 for the time period prior to plaintiffs' nonacceptance of the City's offer of judgment.

The City seeks to preclude all hours after March 20, 2005 (Docket Entry # 148,

---

**21.** This court therefore excludes the following costs: September 26, 2002 (half the postage); October 3, 2002 (half the postage); November 8, 2002 (postage); December 13, 2002 (second entry); December 30, 2002 (first entry); January 23, 2003 (half of first entry); April 29, 2003; May 1, 2003; July 22, 2003 (60 percent); December 30, 2003 (first entry); August 9, 2004 (first entry); August 13, 2004 (fourth entry); and October 26, 2004 (first and fourth entry).

p. 3) because of plaintiffs' nonacceptance[22] of the City's offer of judgment on March 10, 2005 (Docket Entry # 148, Ex. 1). The City offered $50,000 and plaintiffs only recovered $30,000 at trial.

■ "[A] civil rights defendant is not liable for attorney's fees incurred after a pretrial settlement offer, where the judgment recovered by the plaintiff is less than the offer." *City of Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (citing *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985)); *see also Fafel v. DiPaola,* 399 F.3d 403, 413 (1st Cir.2005) (Rule 68 creates a disincentive for plaintiffs to reject offers by imposing a risk of being charged costs after rejection of offer if judgment obtained is less favorable than the offer); *Mogilevsky v. Bally Total Fitness Corp.,* 311 F.Supp.2d 212, 219 (D.Mass.2004).

Attorneys' fees and costs prior to the offer, however, need to be determined to ascertain whether the judgment recovered by plaintiffs, attorneys' fees and costs are less than the Rule 68 offer by the City. Thus, since there was a $20,000 difference between the offer (which included attorneys' fees and costs) and the judgment, if pre-offer attorneys' fees and costs are less than $20,000, plaintiffs took this risk and lost the right to recover attorneys' fees for time expended after nonacceptance of the offer (March 20, 2005).

This court has determined that attorneys' fees and costs, prior to the nonacceptance of the City's offer of judgment totals $16,959.71. Consequently, plaintiffs were in a better position to accept the offer of judgment of $50,000 rather than receiving $30,000 at trial and $16,959.71 in attorneys' fees and costs (totaling

$46,959.71). Plaintiffs are therefore not entitled to attorneys' fees after the nonacceptance of the City's offer of judgment.

The City also contends that plaintiffs are not entitled to prejudgment interest. Plaintiffs have not sought an award of prejudgment interest (Docket Entry # 150, p. 17) and, accordingly, this court need not address the matter.

■ Plaintiffs claim a right to post judgment interest. (Docket Entry # 150, p. 17). This district has adopted the majority rule that post judgment interest begins to accrue when the plaintiffs are entitled to the award, not necessarily when the award is quantified. *Edge v. Norfolk Financial Corp.,* 2005 WL 2323193 at *9 (D.Mass. Aug.29, 2005). Therefore, plaintiffs are entitled to post judgment interest from October 27, 2005, the date of the jury verdict for plaintiffs against the City.

*CONCLUSION*

In accordance with the foregoing discussion, the City's motion to preclude fees and costs after March 20, 2005 pursuant to Rule 68 (Docket Entry # 148) is **ALLOWED.** Plaintiffs' motion for attorneys' fees and costs (Docket Entry # 137) is **ALLOWED** in part and **DENIED** in part. This court awards plaintiffs $13,264.87 in attorneys' fees and $3,694.84 in costs, for a total of $16,959.71. Post judgment interest on this award shall accrue in accordance with 28 U.S.C. § 1961 from October 27, 2005, until the date the award is paid.

**22.** Rule 68 states: "An offer not accepted shall be deemed withdrawn. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."