**Edward A. STEFAN, Jr., et al., Plaintiffs, Appellants,**

v.

**Robert A. LAURENITIS, etc., et al., Defendants, Appellees.**

No. 88–2087.

United States Court of Appeals, First Circuit.

Heard May 2, 1989.

Decided Nov. 17, 1989.

364

Michael Avery, with whom, Avery & Friedman, was on brief for plaintiffs, appellants.

Thomas J. Donoghue, with whom, Moriarty, Donoghue & Leja, P.C., was on brief, for defendants, appellees.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

RE, Chief Judge:

Plaintiffs-appellants, Edward Stefan and John Dunn, appeal from an order of the United States District Court for the District of Massachusetts which denied their motion for reasonable attorneys' fees as the "prevailing parties" in an action brought under 42 U.S.C. § 1983.

Seeking injunctive relief and damages, Stefan and Dunn brought this section 1983 action alleging that their rights under the first and fourteenth amendments to the United States Constitution had been violated by defendants-appellees, Robert Laurenitis and Marion Wysocki, officers of the Town of Sunderland, and the town itself. Stefan and Dunn alleged that Laurenitis and Wysocki, under color of the authority of the town, beginning November 1982 and continuing until the filing of this action in February 1984, harassed and intimidated them in the conduct of their business. The district court denied Stefan and Dunn's motion for a preliminary injunction.

Two days before the trial date, the Town of Sunderland, pursuant to Rule 68 of the Federal Rules of Civil Procedure, filed an offer of judgment for $10,000. This offer was accepted by Stefan and Dunn, and judgment in that amount was entered against the town. The action against Laurenitis and Wysocki was dismissed when each of them agreed to pay $3,000 in damages.

Following these settlements, Stefan and Dunn filed a motion to recover attorneys' fees from the town pursuant to 42 U.S.C. § 1988. Since the district court held that appellants were not "prevailing parties," their motion for attorneys' fees was denied. The district court also held that "even if [Stefan and Dunn] are prevailing parties under 42 U.S.C. § 1988, there are nevertheless 'special circumstances' present justifying the denial of [their] fees request under this Court's discretionary powers within the statute." *Stefan v. Laurenitis*, 695 F.Supp. 1330, 1339 (D.Mass.1988).

Stefan and Dunn contend that the district court erred in holding that they had not prevailed, and that "special circum- stances" rendered an award of attorneys' fees unjust.

The question presented is whether the district court erred in denying the motion for reasonable attorneys' fees, brought under section 1988, because of its holding that Stefan and Dunn "are not prevailing parties under 42 U.S.C. § 1988," and, even if they were "prevailing parties" within the meaning of the statute, the presence of "special circumstances" renders the award of attorneys' fees unjust.

Since we hold that Stefan and Dunn are "prevailing parties" because they have prevailed on a "significant issue in the litigation," and that there are no "special circumstances" which justify the denial of reasonable attorneys' fees, the judgment of the district court is reversed, and the case is remanded for a determination of an appropriate award of attorneys' fees.

## BACKGROUND

Edward Stefan and John Dunn were the co-owners of a drinking and entertainment establishment in Sunderland, Massachusetts, called the "Rusty Nail Inn." The Rusty Nail presented performances by rock and roll bands, and primarily attracted local college students. Robert Laurenitis was a member of the Sunderland Board of Selectmen, and Marion Wysocki was a member of the Sunderland Board of Health.

Stefan and Dunn purchased the Rusty Nail in 1971. At that time, Marion Wysocki, and her son Kenneth, had unsuccessfully attempted to purchase the Rusty Nail. Ten years later, Barry Wysocki, another son of Marion Wysocki, sought to purchase the Rusty Nail, but Stefan refused his offer. Barry Wysocki later became an employee of a competing establishment, Hangar One.

A popular band called "The Blushing Brides" performed at Hangar One in the summer of 1982. On November 13, 1982, the band returned to the Sunderland area, but performed at the Rusty Nail instead of Hangar One. The next day, "after the busiest night of the year at the Rusty Nail," Marion Wysocki made three unsche-

duled inspections of the Rusty Nail. She was accompanied on the first two inspections by two other members of the town Board of Health, and on the third by Laurenitis. Stefan and Dunn characterized Wysocki's manner during the inspections as "rude, belligerent and antagonistic," and asserted that Wysocki threatened to " 'close this place down.' " Dunn wrote a formal letter of complaint to the town, and requested both an apology and a promise that Wysocki "will not behave in that manner in any establishment in Sunderland."

Stefan and Dunn personally presented the letter to the Board of Selectmen at a Board meeting on November 15, 1982, and the minutes of the meeting reflect the hostility that prevailed. After Stefan accused Wysocki of personal bias, Laurenitis ordered Stefan to "[a]ppologize (sic) to everyone or I won't sign your license this year." Then, when Stefan refused to apologize, and asserted that both Wysocki and Laurenitis were biased against him, Laurenitis ordered a town police officer to remove Stefan from the meeting. Later, Laurenitis told Dunn to "[w]ithdraw your letter or we will have a different view of you." Dunn refused to "withdraw" his letter of complaint.

The record indicates that there is a question whether Laurenitis " 'held a grudge against the owners of the Rusty Nail,' " because the former Sunderland police chief, who " 'had quarreled over many issues' " with Laurenitis, worked part time at the Rusty Nail. Record at 181 (quoting Greenfield Recorder, April 13, 1983, at 8, col. 1). Also, " 'Stefan supported the candidacies of former Selectmen ... with whom Laurenitis ha[d] also argued.' " *Id.*

Stefan and Dunn allege that, subsequent to the Board meeting, Laurenitis continued to use his position as a selectman of the town of Sunderland to harass and intimidate them in conducting their business, the Rusty Nail. They allege that Laurenitis orchestrated a series of harassing inspections by town and state employees. At the hearing on Stefan and Dunn's motion for a preliminary injunction, Stefan testified that

[t]here was just so many [inspections] it was one after another. If it wasn't the Board of Health, it was the State Board of Health. If it wasn't the State Board of Health, it was the Building Inspector.... They would come in and find one thing, and we would fix the thing one way and then they would come in the next time and they wanted that changed because that wasn't right.

Stefan testified that, previous to the confrontation at the Board meeting, the Rusty Nail had received approximately one annual health inspection and one annual building inspection. It is to be noted that there is no evidence in the record of any major health or building code violations at the Rusty Nail.

Stefan and Dunn also allege that Laurenitis threatened to use his office to deny Stefan and Dunn a renewal of their liquor license, and to advance the Sunday morning closing time of the Rusty Nail. At a December 13, 1982, meeting of the Board of Selectmen, Laurenitis maintained that Stefan "is not operating an inn and should not have an Innholders license and he would not sign that license unless Mr. Stefan would change to an appropriate license or" obtain the approval of the state liquor authority. Although Laurenitis finally signed the renewal, he signed only one week before the license was to expire, and only after continually threatening not to sign.

In April 1983, Laurenitis began a campaign to advance the Sunday morning closing time of Sunderland bars from 2:00 a.m. to 1:00 a.m. Only the Rusty Nail and one other establishment would be adversely affected by the advanced closing time, since these were the only Sunderland bars that regularly remained open until 2:00 a.m. on Sunday. Pursuant to Massachusetts law, "local licensing authorities," such as the Sunderland Board of Selectmen, have authority to establish "[t]he hours during which sales of ... alcoholic beverages may be made by any licensee...." Mass. Gen.L. ch. 138, § 12 (1981 & Supp.1988). However, "[t]he licensing authority shall not decrease the hours during which sales of ... alcoholic beverages may be made by

any licensee until after a public hearing ...; provided, that any licensee affected by such change shall be given two weeks notice of such public hearing...." *Id.* At a Board meeting in May 1983, with one of the three members of the Board of Selectmen absent, and the other abstaining, Laurenitis, by sole vote, enacted an order forcing Sunderland bars to close at 1:00 a.m. on Sundays. No prior notice was given, and no hearing was held.

Suffice it to say that the pleadings of Stefan and Dunn indicate that they were genuinely fearful that Laurenitis and Wysocki, acting in a retaliatory and discriminatory manner, would use their authority as officials of the town of Sunderland to force the Rusty Nail out of business.

On February 2, 1984, Stefan and Dunn filed a complaint under 42 U.S.C. § 1983, alleging, in pertinent part, that their first and fourteenth amendment rights had been violated by the inhibition of their right to petition the government for redress of their grievances. They also alleged that the discriminatory practices of Laurenitis, Wysocki, and the town, in harassing Stefan and Dunn with an excessive number of inspections of the Rusty Nail, denied them equal protection of the law.

After the settlement by all parties, this appeal followed the district court's denial of Stefan and Dunn's motion for an award of reasonable attorneys' fees, from the town, as "prevailing parties" under section 1988.

## DISCUSSION

The determination of this case requires an analysis of section 1988 of title 42 of the United States Code, and of Rule 68 of the Federal Rules of Civil Procedure. In relevant part, Rule 68 states that, "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued." Fed.R.Civ.P. 68. It has been observed that Rule 68 "is not widely used as a means to dispose of cases because it does not authorize reasonable attorneys'

fees as a cost and, therefore, provides no effective deterrent to unreasonable refusals to settle." Sprizzo, *Unjustifiable Refusals to Settle and Rule 68*, 62 St. John's L.Rev. 443, 444 (1988). It is noteworthy that, in recent years, the Advisory Committee on the Federal Rules of Civil Procedure has twice recommended revising Rule 68 to allow for an award of attorneys' fees. *See id.* at 444–48.

In *Marek v. Chesny*, 473 U.S. 1, 7–12, 105 S.Ct. 3012, 3015–18, 87 L.Ed.2d 1 (1984), the Supreme Court held that the term "costs," as used in a Rule 68 offer of judgment, includes attorneys' fees awardable under 42 U.S.C. § 1988. The Court observed that Rule 68 was enacted at a time when "federal statutes had authorized and defined awards of costs to prevailing parties for more than 85 years." *Id.* at 8, 105 S.Ct. at 3016. Indeed, several statutes "directed courts to award attorney's fees as part of the costs in particular cases." *Id.* Therefore, in *Marek*, the Supreme Court concluded that

> the most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority.... Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

*Id.* at 9, 104 S.Ct. at 3016.

■ Thus, in the case at bar, Stefan and Dunn are entitled to attorneys' fees, as part of their *costs* under the Rule 68 settlement, provided that they are entitled to costs under 42 U.S.C. § 1988.

In pertinent part, section 1988 expressly provides that a federal court, "[i]n any action or proceeding to enforce a provision of section [ ] ... 1983 ... of this title ... in its discretion, may allow the *prevailing party* ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1982) (emphasis added). The question that must be decided, therefore, is whether Stefan and Dunn are entitled to attorneys' fees as

part of the costs under section 1988. The answer to this question depends upon whether they were the "prevailing parties" in this lawsuit.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court stated that the standard for determining whether a plaintiff is a "prevailing party" within section 1988 "has been framed in various ways. A typical formulation is that 'plaintiffs may be considered "prevailing parties" ... if they succeed on any significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit.'" *Id.* at 433, 103 S.Ct. at 1939 (emphasis added) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). The *Hensley* court proceeded to discuss at length, guidelines for determining the amount of the fee award. *Id.* at 433–37, 103 S.Ct. at 1939–41.

In *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court reasserted the *Hensley* standard, but prescribed more precise guidelines to measure or test whether a party has "prevailed" sufficiently to recover attorneys' fees under § 1988. It is instructive that the Court observed that

> [a]lthough ... *Hensley* did not adopt one particular standard for determining prevailing party status, *Hensley* does indicate that the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.

*Id.* 109 S.Ct. at 1492 (emphasis in original).

The *Texas Teachers* Court reaffirmed the holding of *Hensley* that "plaintiffs may be considered 'prevailing parties' ... if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* 109 S.Ct at 1491 (quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939). It emphasized that the plaintiff need not prevail on the "central" issue of the lawsuit, but only on *any* significant issue. *See id.* 103 S.Ct. at 1492–93. The Court stated that "at a minimum, ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* 103 S.Ct. at 1493. The Court, of course, noted that if plaintiff's success is so insignificant that it can be characterized as "purely technical or *de minimis*," then the plaintiff cannot be considered a prevailing party within section 1988. *See id.*

In *Texas Teachers*, the petitioners, state and local teachers associations, brought suit under 42 U.S.C. § 1983 alleging that school district policy "prohibiting communication by or with teachers" during school hours regarding union activities, violated their first and fourteenth amendment rights. The Court of Appeals for the Fifth Circuit affirmed the district court's entry of summary judgment for the school district, holding that, under the first amendment, the school district was not required to allow union representatives access to the schools during teaching hours. *See Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 777 F.2d 1046 (5th Cir.1985), *aff'd mem.*, 479 U.S. 801, 107 S.Ct. 41, 93 L.Ed.2d 4 (1986). The court of appeals, however, also held that the restraint on inter-teacher communications concerning employee organizations was unconstitutional. *See id.* at 1053–55. Subsequently, the plaintiffs filed an application, with the district court, to recover attorneys' fees under section 1988 which was denied. The denial was affirmed by the court of appeals. *See Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 837 F.2d 190 (5th Cir. 1988). The Supreme Court reversed, and held that, although the plaintiffs did not fully succeed in their lawsuit, they did prevail on a significant issue, by obtaining some of the relief that they originally sought. *See Texas Teachers*, 109 S.Ct. at 1494. Hence, since they were "prevailing parties," they were entitled to attorneys' fees. *See id.*

The Court reasoned that the teachers successfully altered their legal relationship with the school district when the court of appeals held that the restraint on inter-teacher communications was unconstitu-

tional. *See id.* As a result of that decision, the school districts' right to exercise control over its teachers' communications with one another was diminished. Hence, since "[t]hey prevailed on a significant issue in the litigation and have obtained some of the relief they sought," the teachers were "prevailing parties" within section 1988. *Id.*

■ Stefan and Dunn, in this case, would be "prevailing parties" within the meaning of section 1988, provided that they "succeeded on 'any significant issue in [the] litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas Teachers*, 109 S.Ct. at 1493 (quoting *Nadeau*, 581 F.2d at 278–79). At a minimum, Stefan and Dunn have succeeded or "prevailed" if their lawsuit can be said to have changed "the legal relationship" between them and Laurenitis, Wysocki, and the town.

Stefan and Dunn sued for an injunction to prohibit the unannounced inspections of the Rusty Nail, and for monetary damages. Although the injunction was denied, they did receive $16,000 in damages as a result of the settlements. Hence, it is clear that Stefan and Dunn succeeded in obtaining some of the relief sought, and did achieve one of their objectives in bringing this suit, viz. monetary damages.

In holding that appellants are not "prevailing parties," the district court relied on "the lack of factual support for plaintiffs' case relating to the constitutional claims, in addition to the relatively small recovery." *Stefan*, 695 F.Supp. at 1339. The court referred to the settlement as "an example of a 'nuisance settlement.'" *Id.* The Court noted that the town's Rule 68 offer of judgment expressly stated that it "is not to be construed ... as an admission that the ... Town ... is liable...." *See id.* at 1338. In substance, the district court deemed the appellants' success to be "purely technical or *de minimis*," and insufficient to enable appellants to be "prevailing parties" within 42 U.S.C. § 1988. *See Texas Teachers*, 109 S.Ct. at 1493.

In their complaint, Stefan and Dunn sought $1,900,000 in both compensatory and punitive damages, and the settlement was for a much smaller amount. The relative value of the amount obtained by Stefan and Dunn, however, is, at best, only a factor in determining whether appellants' success was *de minimis*. Notwithstanding the discrepancy in the amount claimed and the amount received, the district court acknowledged that $16,000 is not "an insignificant amount of money." *Stefan*, 695 F.Supp. at 1339. Indeed, the court added that "even by today's standards it is a substantial sum." *Id.* It may be added that the settlement not only was not *de minimis*, but may deter future harassment of Stefan and Dunn. The settlement is "a resolution of the dispute which changes the legal relationship" between the parties. *Texas Teachers*, 109 S.Ct. at 1493.

■ The town's Rule 68 offer stated that it "is not to be construed either as an admission that the ... Town of Sunderland ... is liable in this action, or that the Plaintiffs have suffered any damage." The circumstances of the settlement, however, indicate that the parties deliberately left open the question of who should pay Stefan and Dunn's attorneys' fees. At a conference before the district court, prior to entry of the Rule 68 offer of judgment against the town, Stefan and Dunn's attorneys stated that the parties would try to settle the issue of attorneys' fees, and that, if no settlement could be reached, then they would file a motion with the court for attorneys' fees. Under these circumstances, since the issue of attorneys' fees was deliberately left open in the Rule 68 offer, the town cannot state that its language denying liability is also evidence of the parties' intent not to include attorneys' fees in the settlement.

In sum, we hold that a $16,000 settlement is not *de minimis*, and that, on the totality of the circumstances presented, Stefan and Dunn are "prevailing parties" within 42 U.S.C. § 1988.

The district court also held "that even if plaintiffs are prevailing parties under 42 U.S.C. § 1988, there are nevertheless 'special circumstances' present justifying the denial of [Stefan and Dunn's] fees request

under this Court's discretionary powers within the statute." *Stefan*, 695 F.Supp. at 1339.

█ In *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975), the Supreme Court held that "courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others...." Instead, the Court held that it is for Congress "to carve out specific exceptions to a general rule that federal courts cannot award attorneys' fees...." *Id.* Of course, the *Alyeska* rule "does not apply when the opposing party has acted in bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980). When a party acts in bad faith, a federal court has the inherent power to impose sanctions, including an award of attorneys' fees to the opposing party. *See generally*, G. Joseph, *Sanctions: The Federal Law of Litigation Abuse*, 385–399 (1989).

In response to the *Alyeska* decision, Congress enacted 42 U.S.C. § 1988. The statute "is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866." S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5908, 5909–10. The report of the Senate Judiciary Committee noted that "[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. Furthermore, in civil rights litigation, "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting *Newman v. Piggie Park Enters.,*

*Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

In this case, relying on the Ninth Circuit case of *Seattle School Dist. No. 1 v. State of Washington*, 633 F.2d 1338 (9th Cir. 1980), *aff'd on other grounds*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982), the district court concluded that Stefan and Dunn were not entitled to attorneys' fees because this case fell within the "special circumstances" exception which would render the award unjust. *Stefan*, 695 F.Supp. at 1340. The *Seattle School Dist. No. 1* case calls for an analysis of "whether allowing attorney's fees in a particular case would further the congressional purpose in adopting the [civil rights] [a]cts," and for a "balanc[ing] of [the] equities." 633 F.2d at 1348.

In the case at bar, the district court stated that, since the complaint alleged essentially state law torts, "dressed up and pursued in federal court," the Congressional purpose of encouraging private enforcement of the Civil Rights laws would not be favored by the grant of attorneys' fees to Stefan and Dunn. *Stefan*, 695 F.Supp. at 1341. Additionally, the court found that Stefan and Dunn had "failed to come forth with factual support on virtually all of their constitutional charges," and, thus, the equities did not favor an award of attorneys' fees. *Id.*

█ The mere fact that a violation of a constitutional right may also constitute a state law tort would not per se bar a prevailing party in a section 1983 action from recovering attorneys' fees under section 1988. Furthermore, in a Rule 68 offer of judgment or settlement, the question presented is whether the civil rights plaintiff is a "prevailing party," not whether the plaintiff would necessarily have won had the case proceeded to judgment following a trial. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). *See generally, Maher v. Gagne*, 448 U.S. 122, 128–29, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980) (section 1988 authorizes an award of attorneys' fees to a plaintiff in a section 1983 action who obtained a con-

sent decree pursuant to a settlement, even though the settlement is "without any determination that the plaintiff's constitutional rights have been violated").

It would appear that the district court applied the standard or analysis adopted or utilized in *Seattle School Dist. No. 1.* This circuit, however, has not adopted the analysis of the *Seattle School Dist. No. 1* case.

In *Burke v. Guiney,* 700 F.2d 767, 772 (1st Cir.1983), this court held " 'that a court which denies an award of attorney's fees must issue findings of fact and conclusions of law identifying the "special circumstances" and explaining why they render an award unjust.' " (quoting *Sethy v. Alameda County Water Dist.,* 602 F.2d 894, 897 (9th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980)). "Among the special circumstances that may be considered are 'the presence or absence of any bad faith or obdurate conduct on the part of either party, and any unjust hardship that a grant or denial of fee-shifting might impose.' " *Id.* at 773 (quoting *Zarcone v. Perry,* 581 F.2d 1039, 1044 (2d Cir.1978)).

 The district court, commenting upon the allegations of grievances and harassment of Stefan and Dunn, suggested "that the federal allegations were more contrived by clever counsel than grounded upon sound facts," and that Stefan and Dunn's claim "is a small town political dispute which has sadly been dressed up and pursued in federal court." *Stefan,* 695 F.Supp. at 1341. Since we have concluded that the recovery in this case is not *de minimis* the underlying civil rights complaint cannot be deemed frivolous nor the recovery a mere nuisance settlement.

Stefan and Dunn allege a prolonged series of harassments perpetrated by Laurenitis and Wysocki under color of authority of the town of Sunderland. Indignant at what they regarded as discriminatory harassment by town officials who adversely affected their right to pursue a lawful business, Stefan and Dunn sued in federal court under the civil rights laws. Under the circumstances, their resentment and indignation should not be regarded or con-

fused with, "bad faith or obdurate conduct." Thus, there are no "special circumstances" to deprive them of an award of reasonable attorneys' fees.

## CONCLUSION

Since the appellants Stefan and Dunn obtained some of the relief they originally sought in bringing this civil rights action, and since this relief was not *de minimis,* we hold that they are "prevailing parties" within the meaning of 42 U.S.C. § 1988 (1982). Additionally, since there exist no "special circumstances" rendering an award of attorneys' fees unjust, we hold that appellants are entitled to reasonable attorneys' fees from the town.

Hence, judgment of the district court is reversed and the case is remanded for a determination of reasonable attorney's fees, consistent with the standards set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983).