# United States Court of Appeals
## For the First Circuit

No. 07-2265

MIGDALIA DE JESÚS NAZARIO, personally and in representation
of the Estate of Decedent Michael Ortiz De Jesús,

Plaintiff, Appellant,

v.

JOSÉ A. MORRIS RODRÍGUEZ; JOSÉ ORTIZ-REYES,

Defendants, Appellees,

LIEUTENANT JORGE BRENES-ESCOBAR; SERGEANT CARLOS R. SANTOS-ORTIZ,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lipez, and Howard, Circuit Judges
and DiClerico,Jr.,* District Judge.

Mauricio Hernandez Arroyo for appellant.
Irene S. Soroeta-Kodesh, Assistant Solicitor General,
Department of Justice, with whom Maite D. Oronoz-Rodríguez, Acting
Solicitor General, was on brief for appellee.

January 30, 2009

_____

*Of the District of New Hampshire, sitting by designation.

**HOWARD**, **Circuit Judge**.  In this appeal, we review a denial of an award of attorney's fees and costs under the Civil Rights Attorney's Fees Award Act of 1976 (Fees Act), 42 U.S.C. § 1988.  The district court apparently concluded that a jury award of punitive damages unaccompanied by actual or nominal damages in favor of plaintiff-appellant Migdalia De Jesus Nazario (De Jesus Nazario) was insufficient to confer on her the requisite prevailing party status under the Fees Act, and consequently, it declined to award any fees.  Because we conclude that, in the circumstances of this case, the court's determination was in error, we **vacate** the order denying attorney's fees and **remand** the case for calculation of an appropriate award of attorney's fees and costs.

## I.  Background

On behalf of herself and as a representative of the estate of her deceased son, Michael Ortiz De Jesus, De Jesus Nazario  brought an action pursuant to 42 U.S.C. §§ 1983 and 1988, as well as under Puerto Rico Law, alleging that police officers José A. Morris Rodríguez (Rodríguez) and José Ortiz-Reyes (Ortiz-Reyes) violated the decedent's constitutional right to be free from excessive force.[1]  Specifically, she alleged that the defendants' discharge of seventeen rounds from their government-issued firearms

_____

[1]The complaint also stated claims against two police supervisors in their individual capacities:  Jorge Brenes-Escobar and Carlos Santos-Ortiz.  The trial court granted judgment as a matter of law as to those defendants, and that ruling is not before us.

after Michael was already lying on the ground constituted excessive force. The complaint sought actual and compensatory damages "in an amount no less [than] $500,000," and punitive damages "in an amount no less than $300,000."

After trial, a jury returned a verdict in favor of the decedent's estate under § 1983 and Puerto Rico law. But there was a twist: the jury awarded no actual or nominal damages on the § 1983 claim, yet found Rodríguez liable for $25,000 in punitive damages and Ortiz-Reyes liable for $15,000 in punitive damages.[2] Although the plaintiff made no motion for additur of nominal damages, the defendants did not move to set aside the punitive damages award on the ground that such damages may be awarded only when there are actual or nominal damages. Neither party appealed, and the punitive damages judgment became final.

Eventually, De Jesus Nazario moved, pursuant to the Fees Act, for an award of attorney's fees and costs totaling approximately $75,000. She argued that the punitive damages award gave her status as a "prevailing party" under the Fees Act, and therefore that she is entitled to fees and costs. The defendants

_____

[2]There is some dispute over whether the plaintiff requested or the trial court gave any instruction about nominal damages, but we have been provided no transcript to review. After reviewing the jury verdict form, we note that the form itself contains no bar against awarding punitive damages in the absence of any compensatory damages. Moreover, the phrase "nominal damages" does not appear anywhere on the verdict form. As we explain in more detail, this fact does not affect the outcome of our analysis.

resisted on the ground that the jury's failure to award nominal or compensatory damages -- and the plaintiff's failure to request such damages immediately after the jury returned its verdict -- rendered the punitive damages impermissible. Accordingly, they argued that an award of attorney's fees would only compound the legal error.

In light of the plaintiff's failure to move for additur following the verdict, the trial court considered itself bound by our holding in Kerr-Selgas v. American Airlines, 69 F.3d 1205, 1214-15 (1st Cir. 1995), in which we held that in a suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., a punitive damages award is sustainable only if it is accompanied by an award of actual or nominal damages. Nazario v. Rodriguez, No. 04-CV-1952, 2007 WL 1760644, *1 (D. P.R. June 18, 2007). Although the court determined that it would enforce the punitive damages award, it nevertheless concluded that awarding attorney's fees would constitute a "windfall" in light of its understanding of Kerr-Selgas. On that basis, the court declined to award attorney's fees, even though the defendants had not objected to the punitive damages. Id. This appeal of the denial of attorney's fees timely followed the trial court's ruling.

## II. Legal Standards

We normally review an award of attorney's fees for abuse of discretion. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 335 (1st Cir. 2008) (citing Coutin v. Young & Rubicam P.R., Inc., 124

F.3d 331, 336 (1st Cir. 1997)). A district court abuses its discretion if it fails to consider a significant factor in its decisional calculus, if it relies on an improper factor in computing that calculus, or if it considers all of the appropriate factors but makes a serious mistake in weighing such factors. Coutin, 124 F.3d at 336. Under this rubric, "an error of law is always tantamount to an abuse of discretion." Torres-Rivera, 524 F.3d at 336 (citing Roasario-Urdaz v. Rivera-Hernández, 350 F.3d 219, 221 (1st Cir. 2003)).

We begin with a brief review of the legal landscape. In civil rights cases, courts often used their equitable powers to award attorney's fees until the Supreme Court held that under the "American Rule," each party must ordinarily bear his own attorney's fees unless there is express statutory authority to the contrary. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975). Congress responded by enacting the Fees Act to "ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (internal quotation omitted). Consequently, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Supreme Court has clarified that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances

would render such an award unjust."[3]  Hensley, 461 U.S. at 429.

"[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)) (internal quotation marks omitted).  Put another way, a plaintiff is a prevailing party when the "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior."  Farrar v. Hobby, 506 U.S. 103, 111-12 (1992); see also Sole v. Wyner, 127 S. Ct. 2188, 2194 (2007) ("The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.") (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)).  In Farrar, the Court explicitly held that an award for nominal damages serves to alter the legal relationship between the parties such that the plaintiff must be considered a prevailing party. 506 U.S. at 112 ("We therefore hold that a

---

[3]A prevailing defendant, however, "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."  Hensley, 461 U.S. at 429 n.2 (quotation omitted).

plaintiff who wins nominal damages is a prevailing party under §
1988.").[4]

Even if a plaintiff achieves prevailing party status,
special circumstances might still render the award of attorney's
fees and costs unjust.  These special circumstances, however, are
narrowly circumscribed.  As the Supreme Court has explained, the
rationale for confining "special circumstances" to a tight
encincture "is that Congress meant to encourage [civil rights]
lawsuits because of their public purpose."  United States v.
Cofield, 215 F.3d 164, 170 (1st Cir. 2000) (citing Newman v. Piggie
Park Enters., 390 U.S. 400, 401-03 (1968)).  Indeed, we have
consistently held that despite the permissive phrasing of the Fees
Act, "[fee] awards in favor of prevailing civil rights plaintiffs
are virtually obligatory."  Poy v. Boutselis, 352 F.3d 479, 487
(1st Cir. 2003)(quoting Gay Officers Action League v. Puerto Rico,
247 F.3d 288, 293 (1st Cir. 2001)).  Thus, "the burden is on the
defendant to show that unusual conditions would make an award

---

[4]A second precondition for a fee award is that the material
alteration between the parties must be judicially sanctioned.
Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and
Human Res., 532 U.S. 598, 605 (2001) ("A defendant's voluntary
change in conduct, although perhaps accomplishing what the
plaintiff sought to achieve by the lawsuit, lacks the necessary
judicial imprimatur on the change.") (emphasis in original).  The
Supreme Court has noted that fee shifting provisions in the Fair
Housing Amendments Act, 42 U.S.C. § 3601 et seq., and the Americans
with Disabilities Act, 42 U.S.C. § 12101 et seq., should be
interpreted consistently with the Fees Act.  Buckhannon, 532 U.S.
at 603 n.4 (2001) (construing FHAA based in part on Fees Act(citing
Hensley, 461 U.S. at 433)).

unjust or inappropriate." Cofield, 215 F.3d at 171 (citing Herrington v. County of Sonoma, 883 F.2d 739, 744 (9th Cir. 1989)). Moreover, where a trial court determines that such "special circumstances" exist, it must support such a decision with particularized "findings of fact and conclusions of law identifying the special circumstances and explaining why an award would be inappropriate." Poy, 352 F.3d at 488 (quoting De Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 234 (1st Cir. 1990)).

We have had occasion to elaborate on the sorts of "special circumstances" that would permit the outright denial of a fee award, and they are few and far between. We have found that "outrageous" or "inexcusable" conduct on the part of the plaintiff or its counsel during litigation of the case can sometimes constitute "special circumstances" warranting denial of attorney's fees. Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1301 (1st Cir. 1997)(citing Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 1991)).[5] We have similarly suggested other "bad faith or obdurate conduct" might also constitute special circumstances warranting denial of attorney's fees. Stefan v. Laurenitis, 889 F.2d 363, 371 (1st Cir. 1989). In addition, we have suggested that an "unjust hardship that a grant or denial of fee shifting might impose" could

---

[5]In Lewis we found it "inexcusable" that despite the fact that plaintiff had failed "entirely or largely in everything," her lawyers failed to adjust their billing accordingly. 944 F.2d at 955.

also constitute an acceptable reason to deny an award of attorney's fees.  Id.

Nevertheless, few such special circumstances satisfy these stringent criteria.  We have held that a defendant's good faith is "by itself not a special circumstance justifying a denial of attorney's fees."  Burke v. Guiney, 700 F.2d 767, 772 (1st Cir. 1983).  Moreover, noting that the Fees Act "is not meant as a punishment for bad defendants who resist plaintiffs' claims in bad faith," but instead is "meant to compensate civil rights attorneys who bring civil rights cases and win them," we held that a defendant's "good faith reliance even on settled law . . . is not a special circumstance warranting a denial of attorneys' fees under § 1988."  Williams, 113 F.3d at 1301-02 (internal quotation and citations omitted).  Similarly, weaknesses in a plaintiff's case do not constitute a special circumstance (or an otherwise appropriate factor) warranting denial of an award of attorney's fees.  Coutin, 124 F.3d at 341.  In Coutin, we explained that

> [a]fter a jury's verdict has been rendered and has withstood whatever barrage of post-trial motions may ensue, the time for debate has expired.  It is an abuse of discretion for the trial court thereafter to vent its skepticism about the claimant's right to recover by reducing the fee award to which the prevailing party is entitled. . . .   Indeed, if a plaintiff has a thin case but nonetheless manages, as here, to secure [a large verdict,] such template suggests skillful advocacy, perhaps worthy of an award of full fees.

- 9 -

124 F.3d at 341-43 (citing Stefan, 889 F.2d at 370-71; De Jesus, 918 F.2d at 235).

### III. Analysis

In declining to authorize any attorney's fees, the district court began by noting that although the jury found a constitutional violation, it did not award compensatory or nominal damages, the latter of which the plaintiff did not request. Thus, the court reasoned that circuit precedent, which allows fee awards based on nominal damages, foreclosed the possibility that the jury's finding of constitutional liability but not damages, by itself could support the finding that De Jesus Nazario was a prevailing party within the meaning of the Fees Act. Nazario, 2007 WL 1760644, at *1 ("Consequently, attorney's fees may not be predicated solely on the jury's finding of liability with no compensatory damages." (citing Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 124-27 (1st Cir. 2004))).

Although its opinion was somewhat unclear on this point, the court also appears to have determined that the jury's punitive damage award similarly could not support prevailing party status, despite the defendants' failure to object to or appeal the punitive damages award. The court believed the punitive damage award was contrary to our decision in Kerr-Selgas, requiring actual or nominal damages as a precondition to an award of punitive damages. Id. (citing Kerr-Selgas, 69 F.3d at 1214-15). The court did,

- 10 -

however, state that the unobjected-to punitive damages award itself had become final and would be enforced.  Id.  ("the Court cannot at this time vacate the punitive damages judgment (and will enforce it)").  But because it concluded that the punitive damages award was "more than adequate" to cover attorney's fees, and because it did not want to layer one "windfall on top of another windfall," the trial court declined to award attorney's fees.[6]  Id.

De Jesus Nazario's argument in favor of attorney's fees treads a simple but effective path:  first, she notes that the jury awarded her punitive damages in the aggregate amount of $40,000, and second, she notes that the trial court has confirmed that the award will be enforced.  Based on these two indisputable facts, De Jesus Nazario argues she meets the requirements for prevailing party status.  Thus, De Jesus Nazario asserts that any further objections should be directed to the amount of an attorney's fees award, not its availability.  See Farrar, 506 U.S. at 114 ("Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success

---

[6]The trial court's statement that the punitive damages judgment is "more than adequate in this instance to cover attorney's fees" suggests that the trial court may have viewed the fact that the punitive damages judgment did not comply with our rule in Kerr-Selgas as a special circumstance warranting denial of attorney's fees.  Although such a reading is a possible one, it appears in tension with the trial court's discussion of Díaz Rivera v. Rivera Rodríguez, 377 F.3d 119 (1st Cir. 2004), which primarily involved a prevailing party analysis.  Consequently, we read the trial court's decision as resting on a prevailing party analysis.

goes to the reasonableness of the fee award under <u>Hensley</u> v. <u>Eckerhart</u>.") (citation omitted); <u>see also</u> <u>Gay Officers Action League</u>, 247 F.3d at 293-94 ("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.") (<u>quoting</u> <u>Tex. State Teachers Ass'n</u>, 489 U.S. at 790).

We agree. The test for determining De Jesus Nazario's status as a prevailing party has been met. The trial court has acknowledged that De Jesus Nazario's damages award is final and that the court will enforce it. The parties' relationship has thus been altered in De Jesus Nazario's favor and her success has the necessary legal imprimatur. Consequently, De Jesus Nazario is a prevailing party, who is ordinarily entitled to an award of attorney's fees.

Construing analogous attorney's fees provisions of the Fair Housing Act, 42 U.S.C. § 3613(c)(2), the Third Circuit has held that a plaintiff is entitled to "prevailing party" status based on a jury's finding that the Fair Housing Act was violated, despite the jury's failure to award compensatory or nominal damages, and the trial court's failure to submit the question of punitive damages to the jury. <u>Alexander</u> v. <u>Riqas</u>, 208 F.3d 419, 429-30 (3d Cir. 2000) (directing the district court to enter judgment for plaintiffs and award attorney's fees and costs on

remand based on finding of statutory violation without award of actual or nominal damages).  De Jesus Nazario thus has a fair argument that she is entitled to fees even if the punitive damages award were not enforceable.  But her success has been more than establishing a violation.  She has become entitled to collection of a money judgment.  Because the trial court has properly determined that it will enforce the punitive damages award, De Jesus Nazario, a fortiori, is a prevailing party and is entitled to an award of attorney's fees and costs.

Since the defendants did not appeal the punitive damages award, this case is distinguishable from the Supreme Court's recent decision in Sole v. Wyner.  127 S. Ct. 2188 (2007).  In Sole, the Court found that a plaintiff's "fleeting" success in securing a preliminary injunction, id. at 2195, which was later dissolved, because the statute challenged was found to be constitutionally sound, was not sufficient to convey prevailing party status because "[a]t the end of the fray . . . [the plaintiff] gained no enduring change in the legal relationship between herself and the state officials she sued."  Id. at 2196.  Here, De Jesus Nazario has secured her enforceable punitive damages award, which the defendants will pay. Consequently, De Jesus Nazario's relationship with the defendants has changed in the requisite enduring manner.

In arguing that the district court's order denying fees should be affirmed, the defendants first say that the legal

infirmity of the punitive damages award renders the plaintiff's success merely technical or _de minimis_,[7] thereby depriving her of prevailing party status. We have already explained the flaw in this argument: as a result of the litigation, there was a cognizable alteration in the legal relationship between the parties, and therefore the plaintiff is a prevailing party.

In this regard we also note that the procedural posture of this case causes us to view this challenge with a jaundiced eye because any objection that the punitive damages award was improper has already been forfeited at least twice. The defendants at trial failed to move on these grounds to vacate the underlying punitive damages award and also failed to appeal the award. We are especially concerned about the implications of these failures, because of the sandbagging opportunities they present. Although we do _not_ suggest such was the case here, delay in attacking the punitive damages award until a collateral proceeding could easily be a strategic decision to avoid reminding the plaintiff of the availability of a nominal damages instruction -- even post-verdict -- which would regularize the punitive damages award in this circuit. See _Campos-Orrego_ v. _Rivera_, 175 F.3d 89, 99 (1st Cir.

---

[7] see _Gay Officers Action League_, 247 F.3d at 294 (noting that in the abstract, securing injunction against moribund statute or regulation constitutes _de minimis_ success not worthy of prevailing party status, but declining to find such a standard satisfied in that case).

1999) (noting that timely request for nominal damages can be made before case is submitted to jury or later to the judge).

The appellees next argue that the legal defect in the punitive damages award constitutes the sort of "special circumstance" that serves to render a fee award unjust in this case. There is an insufficient basis for that conclusion.

The district court viewed the punitive damages award as a windfall because the award was prohibited by Kerr-Selgas. Unlike the district court, we think the applicability of the Kerr-Selgas rule to this case is so questionable that the award of fees cannot be considered unjust. In Kerr-Selgas, we noted that at common law, an award of punitive damages generally must be accompanied by an award of actual or nominal damages. 69 F.3d at 1214. We went on to explain that a finding of liability in a Title VII case does not render a plaintiff "automatically entitled" to a nominal damages award. Id. at 1215. Based on this understanding, we held that in Title VII cases, "a punitive damages award must be vacated absent either a compensatory damages award or a timely request for nominal damages." Id. In so doing, we relied on two authorities for our understanding of the common law: a Third Circuit case applying New Jersey law and comments to the Restatement (Second) of Torts. Id. at 1214 (citing Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 281-83 (3d Cir. 1995); Restatement (Second) of Torts § 908 cmts. b, c).

Each of these sources of authority, however, is problematic. As another circuit has noted, there is no consensus at common law regarding the availability of punitive damages absent compensatory or even nominal damages. Cush-Crawford v. Adchem Corp., 271 F.3d 352, 358 (2d Cir. 2001) (noting that there is "no one common law rule" and collecting cases describing approaches of many states, several of which permit punitive damages absent compensatory or actual damages).[8] In addition, the Restatement can be read to support the proposition that one need not prove actual or nominal damages to support a punitive damages award. See Restatement (Second) of Torts § 908, cmt. c ("[I]t is not essential to the recovery of punitive damages that the plaintiff should have suffered any harm, either pecuniary or physical."). We have acknowledged skepticism by other circuits of the rule we announced in Kerr-Selgas, and have noted that only one of them has followed our approach. Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 238 (1st Cir. 2006) (stating that "only one other circuit appears to follow the Kerr-Selgas rule") (citing La. ACORN Fair Hous. v. LeBlanc, 211 F.3d 298, 303 (5th Cir. 2000)). Recently, however, even that circuit backed away from the Kerr-Selgas rule in Title VII cases. Abner v. Kansas City S. R.R. Co., 513 F.3d 154, 160

[8]In other contexts, the Third Circuit has not required proof of actual or nominal damages to support punitive damages. See, e.g., Basista v. Weir, 340 F.2d 74, 86 (3d Cir. 1965) (§ 1983 actions); Alexander, 208 F.3d at 430-34 (3d Cir. 2000) (actions brought pursuant to the Federal Housing Act).

- 16 -

(5th Cir. 2008) ("We agree with the conclusions of several of our sister circuits that a punitive damages award under Title VII and § 1981 need not be accompanied by compensatory damages.").

Of course, if the rule in <u>Kerr-Selgas</u> encompasses suits for damages under § 1983, we are bound to follow it. But, we have never held that <u>Kerr-Selgas</u> applies to actions brought under § 1983, and have suggested the probability that we would not apply it in such suits. In <u>Campos-Orrego</u>, we noted:

> While it is true that in a typical state law tort case punitive damages unaccompanied by either compensatory or nominal damages cannot stand, . . . a section 1983 case premised on a constitutional violation evokes a different set of considerations. Several respected courts have ruled persuasively that, as a matter of federal law, a punitive damage award which responds to a finding of a constitutional breach may endure even though unaccompanied by an award of compensatory damages.

175 F.3d at 97. We went on to note that such a conclusion would be entirely consistent with <u>Kerr-Selgas</u> because that case involved a <u>statutory</u> rather than a constitutional claim, and that under Supreme Court (and our) precedent, such a distinction "possesses decretory significance." <u>Id.</u> at 97 n.6. Finally, we noted that the Third Circuit eruditely elucidated a compelling rationale for allowing punitive damages absent nominal or compensatory damages over forty years ago:

> [I]f it be once conceded that [punitive] damages may be assessed against the wrongdoer, and, when assessed, may be taken by the

> plaintiff, – and such is the settled law of the federal courts, – there is neither sense nor reason in the proposition that such additional damages may be recovered by a plaintiff who is able to show that he has lost $10, and may not be recovered by some other plaintiff who has sustained, it may be, far greater injury but is unable to prove that he is poorer in the pocket by wrongdoing of defendant.

Id. (quoting Basista, 340 F.2d at 87-88 (citations and internal quotation marks omitted).  The other circuits that have considered this issue unanimously follow the rule announced in Basista.[9]  See, e.g., Robinson v. Cattaraugas County, 147 F.3d 153, 161 (2d Cir. 1998); King v. Macri, 993 F.2d 294, 297-98 (2d Cir. 1993); ACORN Fair Hous., 211 F.3d at 302 (citing Ryland v. Shapiro, 708 F.2d 967, 976 (5th Cir. 1983); Wilson v. Taylor, 658 F.2d 1021, 1033 (5th Cir. Unit B. Oct. 1981); McCulloch v. Glasgow, 620 F.2d 47, 51 (5th Cir. 1980)); Erwin v. County of Manitowoc, 872 F.2d 1292, 1299 (7th Cir. 1989); Salitros v. Chrysler Corp., 306 F.3d 562, 574 (8th Cir. 2002) (citing Goodwin v. Cir. Ct. of St. Louis County, 729 F.2d 541, 548 (8th Cir. 1984); Risdal v. Halford, 209 F.3d 1071, 1072 (8th Cir. 2000)); Gill v. Manuel, 488 F.2d 799, 802 (9th Cir. 1973); Searles v. Van Bebber, 251 F.3d 869, 880-81 (10th Cir.

_____

[9]We have been unable to find cases addressing this issue in the Fourth, Sixth, or D.C. Circuits.  But these courts have not adopted the Kerr-Selgas rule, and at least one of these courts has affirmatively declined to follow it.  See Tisdale v. Fed. Express Corp., 415 F.3d 516, 534-35 (6th Cir. 2005)(declining to follow Kerr-Selgas rule); Corti v. Storage Tech. Corp., 304 F.3d 336, 341-43 (4th Cir. 2002) (reserving decision on Kerr-Selgas rule and permitting punitive damages where back pay was awarded).

2001); Davis v. Locke, 936 F.2d 1208, 1214 (11th Cir. 1991) (citing Wilson v. Taylor, 658 F.2d at 1033).

With this weight of authority permitting the imposition of punitive damages even in the absence of compensatory or nominal damages, the policy of maintaining uniformity in the federal common law militates in favor of at least limiting the Kerr-Selgas rule. See, e.g., Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000) ("If the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision.") (citation omitted); La. ACORN, 211 F.3d at 301 ("When applying civil rights statutes, federal common law must be applied to effect uniformity 'otherwise the Civil Rights Acts would fail to effect the purposes and ends which Congress intended.'" (quoting Basista, 340 F.2d at 86))).[10]

In this circuit several district courts have declined to extend the Kerr-Selgas rule to § 1983 claims. In Acevedo-Luis v. Zayas, citing Campos-Orrego, the district court allowed a punitive damages award of $5,000 to stand despite the jury's failure to award actual or nominal damages. 419 F. Supp. 2d 115, 126 (D. P.R. 2006) aff'd sub nom. Acevedo-Luis v. Pagán, 478 F.3d 35 (1st Cir. 2007)(quoting Campos-Orrego, 175 F.3d 89, 97)). Moreover, after

---

[10]That the federal common law rather than the common law as it exists in the several states should provide the rule of decision regarding punitive damages may be a reason to reexamine the rule set forth in Kerr-Selgas.

canvassing case law in this circuit and others, another district court noted that "in a section 1983 action, a jury may properly award punitive damages even if it awards no compensatory damages." Rivera-Oquendo v. Soto-Santiago, 552 F. Supp. 2d 229, 233 (D. P.R. 2008).

In light of the nearly universal authority counseling against applying the Kerr-Selgas rule to section 1983 actions, we hold that the Kerr-Selgas rule does not (and henceforth will not) apply to such cases. Thus, the district court's decision to accept and enforce the unchallenged punitive damages award was entirely proper. Consequently, De Jesus Nazario's success was not the sort of technical or de minimis victory that can serve to deny prevailing party status under our precedent.[11] See Farrar, 506 U.S.

---

[11]The Supreme Court has emphasized that once any damages -- actual or nominal -- are awarded, any complaints regarding the technical or de minimis nature of a plaintiff's success cannot be addressed in deciding whether the plaintiff was a prevailing party; rather, such arguments would go to the amount of the fee award, not its availability. Farrar, 506 U.S. at 114; Boston Children's First v. City of Boston, 395 F.3d 10, 15 (1st Cir. 2005). Because we conclude that the plaintiff's $40,000 punitive damages award was proper under our precedent and therefore supports prevailing party status, the appellees' complaints regarding the technical or de minimis nature of the award should be addressed in evaluating the quality of the results plaintiff obtained, in accordance with Supreme Court and our precedent. See infra.
   However, where no damages -- actual, nominal, or punitive -- are awarded, the technical or de minimis nature of a plaintiff's victory might support a denial of prevailing party status. Farrar, 506 U.S. at 113 (noting that obtaining declaration that school regulation was unconstitutionally vague was a technical or de minimis victory that did not warrant prevailing party status); Gay Officers Action League, 247 F.3d at 294.

at 114.  Nor was her alleged lack of entitlement to punitive damages so clear under Kerr-Selgas as to render a fee award unjust.[12]

The appellees have one more arrow in their quiver.  They urge -- based on the Supreme Court's holding in Farrar -- that the incongruity between the results the plaintiff initially sought and the results she actually obtained supports a complete denial of attorney's fees.  The defendants observe that a gap of $760,000 separates the aggregate damages the plaintiff sought ($800,000) from the damages that the jury actually awarded ($40,000).  This chasm, they argue, suggests such modest success as to permit a refusal of all fees.  In most cases, however, as we have noted, a gulf between results sought and those obtained is properly addressed when determining the amount of attorney's fees to be awarded, not when determining whether to award fees in the first place.  See Farrar, 506 U.S. at 114; see also Gay Officers Action League, 247 F.3d at 293-94. The defendants, however, press on, correctly noting that the Supreme Court has suggested that where a veritable ocean separates the damages sought from the damages awarded, the appropriate fee can be "no fee at all."  Farrar, 506

---

[12]Neither do we think that plaintiff's failure to request additur -- that she was entitled to receive -- supports a finding of special circumstances constituting an injustice, particularly when we have already held that a defendant's reliance on settled law does not create a special circumstance worthy of denying attorney's fees. Williams, 113 F.3d at 1301-02.

U.S. at 116 (O'Connor, J. concurring) (noting that where plaintiff sought 17 million dollars in damages from six defendants and received one dollar from one defendant, plaintiff should not be entitled to an award of any attorney's fees).

Nevertheless, the cases counsel that courts should normally award some attorney's fees, and adjust the amount of the award to account for the results that the plaintiff obtained.[13] See, e.g., City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) (approving $245,456.25 in fees in a § 1983 action that resulted in a judgment for $33,350); Wagner v. City of Holyoke, 404 F.3d 504, 509-510 (1st Cir. 2005) (upholding trial court's reduction of attorney's fees first by 20% to reflect excesses in filings and then by 90% to reflect fact plaintiff only received nominal damages on one of six claims brought); Poy, 352 F.3d at 488 (vacating denial of fees because we concluded that an aggregate damage award of $35,000 was not de minimis and was sufficient to justify an award of attorney's fees); Lewis 944 F.2d at 956 (Breyer, J., dissenting) (arguing that plaintiff who was awarded damages of

---

[13]We have previously noted that results obtained "has a variety of meanings, including [a] plaintiff's success claim by claim, or to relief actually achieved, or to the societal importance of the right vindicated, or to all of these measures in combination." Coutin, 124 F.3d at 338. Ultimately, we concluded that "the last meaning is the best choice, and that as a consequence, all three types of 'results' potentially bear upon the amount of an ensuing fee award." Id. (citing Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988)). We elaborate infra on some further considerations in determining the quality of the results plaintiff obtained in this case.

$1,000 despite seeking aggregate damages of $300,000 should be entitled to some attorney's fees). Thus, given the not wholly insubstantial size of the punitive damages award, the appropriate course of action on remand is for the trial court to calculate a reasonable attorney's fee that takes into account the quality of the results that the plaintiff obtained.

## IV.  Calculation of Fee

Having determined that the plaintiff is a prevailing party, who is entitled to an award of attorney's fees, we remand the case for determination of an appropriate fee.

Normally, a district court begins with a lodestar analysis, because failure to conduct such an undertaking "creates a substantial burden upon the district court to account for its actions." Coutin, 124 F.3d at 338 (citations omitted). The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure. Torres-Rivera, 524 F.3d at 336 (citing Hensley, 461 U.S. at 433). In crafting its lodestar, the trial court may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case, id., and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims. Lipsett v. Blanco, 975 F.2d 934, 940-41 (1st Cir. 1992). Finally, the trial court has the discretion to adjust the lodestar itself upwards or downwards based

- 23 -

on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter. Torres-Rivera, 524 F.3d at 336.

In making this adjustment, the trial court should be mindful of the complexities of defining the results obtained. As we have already noted, in determining the quality of the plaintiff's results, we look to a combination of the plaintiff's claim-by-claim success, the relief achieved, and the societal importance of the rights vindicated. Coutin, 124 F.3d at 338. We have further noted that the computational principles employed to evaluate a skimpy damage award or shortfall in other relief are difficult to quantify, id. at 339, and have described a constellation of potential outcomes, and permissible attorney's fees calculations, under each. Id. at 339-41. In particular, we have emphasized that "though a meager damage award may be taken into consideration, the [Supreme] Court has squarely disclaimed 'the proposition that fee awards under § 1988 should be proportionate to the amount of damages a civil plaintiff actually recovers.'" Id. at 339 (quoting Rivera, 477 U.S. at 574); Rivera, 477 at 585 (Powell, J., concurring).

Similarly, while a trial court can and should reduce the lodestar to disallow fees for time inefficiently, unnecessarily, or unreasonably expended, it also must be mindful of the realities of modern litigation. It is of course true that each fee case

generally rests "on its own congeries of facts," but nevertheless, we have previously reversed decisions to substantially reduce hours allowed for pre-trial proceedings, where we have found that significant time was expended and the plaintiff was not responsible for the delay. De Jesus v. Banco Popular de Puerto Rico, 951 F.2d 3, 6 (1st Cir. 1991). In De Jesus, we noted that the case was an "object lesson in delay, frustration, finger pointing, and paper production," but concluded that the plaintiff's attorney performed a veritable smorgasbord of pre-trial services, which were worthy of some significant compensation. Id. at 6-7. Thus, although it is possible, and indeed likely, that the district court may discount some of the time plaintiff's counsel spent in pre-trial proceedings, the district court should take care to excise only fat, leaving sinew and bone untouched.[14] See id. at 4. Beyond these general observations, we leave the determination of a reasonable fee to the sound discretion of the trial court.

### V.  Conclusion

The trial court's decision to deny an award of attorney's fees and costs is therefore **vacated.**  We **remand** the case for a

---

[14]In the same vein, we reiterate that our precedent forecloses the possibility that the trial court can consider the strength or weakness of the plaintiff's claim -- other than through the results obtained calculus -- in arriving at a fee award because the time for other skepticism regarding the plaintiff's claim has long since passed.  Coutin, 124 F.3d at 331.

- 25 -

determination of reasonable attorney's fees and costs, not inconsistent with this opinion.